F. W. MATTESON v. CITY OF EUSTIS.

190 So. 558
En Banc
Opinion Filed July 28, 1939
Rehearing Denied September 25, 1939

*Harry P. Johnson,* for Petitioner;
*Buie & Hippler,* for Respondent.

TERRELL, C. J.—F. W. Matteson has his home and resides in a residential district within the corporate limits of the city of Eustis, Florida. He moved his industrial plant, to-wit: a small planer, rip saw and sticker into his back yard and operated it for a livelihood. Such operation becoming obnoxious to some of his neighbors, he was arrested and prosecuted under a warrant charging "that F. W. Matteson

did then and there disturb the peace and quiet of the City of Eustis, Florida, and of certain citizens and their families, and did make or cause to be made loud, unusual, and offensive noises and disturbances" contrary to Section One, Ordinance 31 of the City.

He was convicted and sentenced to pay a fine of $50.00 or in default thereof, to serve twenty-five days in the city jail. Said judgment was on writ of error affirmed by the circuit court and is brought here for review by certiorari.

It is contended that the judgment is void and should be quashed because Ordinance 31 of the City is violative of Sections 1 and 12, Declaration of Rights, Constitution of Florida, and the Fifth Amendment to the Federal Constitution, that its title does not give notice of the subject matter of the ordinance, that the warrant does not charge a violation of the ordinance, that the evidence is not sufficient to support the charge, and that the judgment exceeded the maximum fine imposed by the ordinance.

The ordinance, the warrant, and the judgment are very poorly and loosely drawn but their purpose is evident and they are shown to have had sufficient of the element of accuracy to accomplish that purpose The record and the briefs are as loose and inartificially prepared as the warrant and the ordinance. At every step in the cause, the rules of pleading and construction were given to the discard and the evidence may be taken to prove everything that both sides set out to prove. In fact, it shows that some of petitioner's neighbors slept through the whir and drone of his planer and rip saw and were in no way disturbed by them while others had "nerves" and for this or other reasons were distracted and driven to desperation.

On the record, the judgment below might be upheld or quashed and an opinion either way made to read plausible.

We have reached the conclusion, however, that the judgment should be upheld. The case grows out of a local row propagated by local people; it was tried by a local municipal judge and his judgment was affirmed by a circuit judge who lives in the next block and who this Court knows to be able, wise, and just. Everybody connected with the case lived within a stone's throw of each other. It would be difficult to generate a more democratic fuss or one among people more competent to prescribe rules of conduct for the good order of their community, to say what noises and odors should be suppressed and to prescribe standards of social and aesthetic conduct for their governance. They are the judges of when a noise is loud and offensive and no court is authorized to overthrow that judgment unless some provision of organic law is invaded. If, in the enforcement of the standards they impose, the oracles of the law should assault the principles of rhetoric, stab the Queen's English, and do violence to the rules of nice pleading, we will not hold them in error if justice is shown to have been done and nothing more is relied on to defeat it. Justice in the rough is no less justice than justice *de luxe*, no more than the diamond is less a diamond because of the matrix from which it is recovered.

But petitioner interposes as a defense, the trite old American doctrine of free agency to do as one pleases and use what one has as he wills.

If such a philosophy is a fair inference from the Declaration of Rights of the Fifth Amendment, it may also be said that it was a product of rural democracy born of a period when it was a day's journey to visit one's nearest neighbor, when Ohio was away out West, when it was a two weeks' journey from New York to Boston, when our presidents rode to Washington on horseback for the inauguration and

when there were less than three million people in the United States all engaged in a rude species of agriculture or a still ruder species of commerce by river steamer.

More than one hundred and thirty million have supplanted these three million and their means of social and economic existence have multiplied accordingly. So complex have the latter become that the primeval philosophy of do as you please is now as extinct as the river steamer on which its commerce was once borne. Democracy has moved to town and in the moving, has gone industrial. Having emerged from rural to urban, we must learn the lesson of fair play, respect for the rights of others, and experience the ordeal of being house-broken. We pursue our business, exploit our property, and exercise our free will with reference to the right of others to do likewise and as population and means of existence multiply, the more our free will is curbed.

Freedom with concession is the rule of modern democracy. Otherwise the complexities and cross currents which beset us will precipitate the social structure into chaos. Constitutional guaranties must be so interpreted; otherwise the Constitution becomes a straight jacket outmoded by changing conditions. It follows that if uninvited, petitioner moves his planer and rip saw from the woods, where there are no restrictions, to the city, where its operation becomes obnoxious to the dominant sentiment, he must bear the consequences.

The writ of certiorari must be and is hereby quashed.

It is so ordered.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

THOMAS, J., not participating as case was presented before he became a member of the Court.

Brown, J. (dissenting).—I do not think the City had the charter power to make the operation of a lawful private business of this sort a crime, although I concur in the general principle stated in the able opinion. It may be that the City could regulate such a business by excluding its location from the residential portion of the City. Or, without that, the City or persons seriously injured or annoyed, might seek abatement in equity. See 46 C. J. 653, *et seq.*, 43 C. J. 401-438; Thebaut v. Canova, 11 Fla. 143; Shivery v. Struper, 24 Fla. 103, 3 So. 865; Kress & Co. v. Miami, 78 Fla. 101, 82 So. 775; Prior v. White, 132 Fla. 1, 180 So. 347.