Joseph S. Mattina, J.
The defendant appeals from a conviction in the City Court of Buffalo on June 4, 1969. The defendant Dominick was arrested March 19, 1969 following a demonstration in Lafayette Square in the City of Buffalo and was charged with violating article 145 of the revised Penal Law, a misdemeanor, and a violation of chapter IX, section 5(1) of the Ordinances of the City of Buffalo. Defendant was convicted of the violation and acquitted of the misdemeanor.
This appeal raises three issues. First, does the absence of a trial transcript deny the defendant a right to full and fair appellate review? Second, was the information filed by the police defective as a matter of law? Third, are the pertinent sections of the Ordinances of the City of Buffalo, chapter XXV, section 1708 and chapter IX, section 5(1), unconstitutional either as written or as applied?
*426 It is clear that where the trial transcript is unavailable to a defendant by reason of the actions of the State or its agents, the defendant’s right to appeal is thwarted and reversal of the conviction is required. (People v. Pride, 3 N Y 2d 549 [1958]; People v. Foreman, 13 A D 2d 500 [2d Dept., 1961]; People on Complaint of Berry v. DeWilkowska, 246 App. Div. 285 [1st Dept., 1936].)
As the New York Court of Appeals stated in People v. Pride (supra, p. 549): “ it has been the consistent policy of our courts to preserve and promote that right [appellate review] as an effective, if imperfect, safeguard against impropriety or error in the trial of causes. This policy has been particularly manifest on a number of occasions where the failure to provide sufficiently comprehensive reports of the proceedings at the initial stage of litigation threatened to render nugatory the right to appeal. [Citing cases.] In the instances cited the lower courts had failed to make and preserve an adequate record of the proceedings at the trial level. Unequivocally and with emphasis upon the importance and fundamental nature of the right to appellate review, the courts on each occasion held that the making of such a record and its availability to defendant-appellant were absolute requisites and concomitants to the right to review ’ ’.
Even where part of the transcript was unavailable, it was held that due process was absent. (People v. Adams, 22 A D 2d 892 [2d Dept., 1964].)
However, section 456 of the New York Code of Criminal Procedure states that a transcript must be provided only “1. In any case where the defendant is convicted of a crime or where after conviction defendant’s coram nobis application to vacate the judgment is denied or dismissed after a hearing at which testimony has been taken”. (Emphasis added.) Defendant Dominick was convicted of a violation of a city ordinance which is not a crime. (Penal Law, § 10.00, subd. 6.) Inasmuch as subdivision 3 of section 517 of the New York Code of Criminal Procedure grants a defendant a right to appeal, the State may not render that right an exercise in futility by denying the defendant a right to a transcript which would ensure proper consideration of his claims. (Cf. People v. Pitts, 6 N Y 2d 288 [1959].)
Due to the absence of substantial portions -of the trial record and its information, this court is unable to consider the defendant’s contention that the information is defective.
Since this court has decided that the absence of a complete transcript prevents a full and fair appellate review, the conviction must be reversed. It remains to be determined whether *427 a new trial should be ordered under section 543 of the New York Code of Criminal Procedure.
It has been held that a new trial should not be ordered where the defendant could not be convicted of the charge or where the new trial would be needless ceremony. (People v. Eckerson, 133 App. Div. 220 [1909].) If the ordinances under attack here are indeed unconstitutional, then clearly a new trial would be a needless ceremony which would unnecessarily force the defendant to undergo the trauma of a trial. Thus, in order to determine whether a new trial is warranted, the -court must consider and decide the issue of the constitutionality of the ordinances in question.
Additionally, judicial reluctance to decide questions which need not be reached must give way when a case raises important constitutional issues and the controversy is of a character which is likely to recur. (Matter of Bell v. Waterfront Comm. of N. Y. Harbor, 20 N Y 2d 54 [1967].) Clearly, this controversy raising important First Amendment issues is of a character likely to recur, especially since, as shown below, sections of the ordinance are frequently and flagrantly violated and only the discretion of the police officer stands between violation and arrest.
The ordinances involved are section 1703 of chapter XXV and section 5(1) of chapter IX. From the partial transcript, it appears that proof at the trial dealt with section 1703. Yet, defendant-appellant’s .brief states that he was convicted of a violation of section 5(1). Apparently, the violation of section 5(1) was committed by defendant’s failure to comply with the provisions of section 1703.
Section 102 of chapter XXV provides the penalty for failure to comply with ‘1 any reasonable rule, regulation or direction ’ ’ promulgated in section 1703. Thus, the reasonableness of the rules and regulations must be scrutinized before the statutory scheme can be upheld.
Appellant challenges section 1703 as being both overbroad and vague. While these two challenges frequently go together, they are distinct. Vagueness means that the ordinance either forbids or requires ‘1 the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application ”. (Connally v. General Constr. Co., 269 U. S. 385, 391 [1926].)
Overbreadth, on the other hand, means that the ordinance, though clear and precise, violates the constitutional principle that a “ governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved *428 by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.” (Zwickler v. Koota, 389 U. S. 241, 250 [1967]).
Before this court engages in a clause-by-clause scrutiny of section 1703, there are two other factors that must be considered. Section 1703 is written in the form of a license regulation; yet it may ‘ ‘ chill ’ ’ privileged expression just as would a substantively overbroad law if it is slow, cumbersome or onerous in its operations. (LeFlore v. Robinson, 434 F. 2d 933, 946 [5th Cir., 1970].)
A glance at some of the provisions of this section indicates that it is in fact “ slow, cumbersome or onerous.” Section 1703(14) requires an exhaustive and exhausting catalogue of information which must be provided five days before the sound amplification equipment is used. Subdivision (6), which purports to regulate hours of use of the sound equipment, places an onerous burden of showing proof of ‘ ‘ unusual and necessary importance and interest to the public welfare, health or safety ’ ’ if the equipment is to be used outside of prescribed narrow time limits. In these particulars alone, section 1703 inflicts an unjustifiable chilling effect on free speech and suffers the same defect as a substantively overboard law. ‘ ‘ Slow-moving procedures have a much more severe impact in the instant case than they had in Freedman. [Freedman v. Maryland, 380 U. S. 51 (1965)] * * * Timing is of the essence in politics. It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one’s voice heard promptly, if it is to be considered at all.” (LeFlore v. Robinson, supra, p. 947).
The defect of slow and cumbersome operation is aggravated by the lack of any provision for judicial approval of the restraint on effective free speech (see Saia v. New York, 334 U. S. 558, 561 [1948]) inherent in the denial of a permit. The only review available is at the insistence of the applicant and the review is purely administrative. There is no stated period within which review must be had. LeFlore v. Robinson (supra) condemned a permit-granting ordinance that made no provision for “prompt, commission-initiated judicial review.” (Id., p. 948; emphasis added). Similarly, in Chavez v. Municipal Court of Visalia Judicial Dist. (256 Cal. App. 2d 149 [Ct. App., 5th Dist., 1967]) held unconstitutional a loudspeaker ordinance which made delay in granting a permit possible by failing to state a time within which review was to be granted.
The result is that the power of imposing a restraint on free speech under these sections has been delegated to the Commissioner of Police and to a board consisting of the Mayor, Comp *429 troller and President of the Council, under standards which will be shown to be lacking in clarity and precision. Such a delegation is unconstitutional. (Saia v. New York, supra; see, also, Matthes v. Collyer, 32 Misc 2d 224 [1961].)
Turning to the statute itself, the numerous infringements on constitutional rights within its subdivisions are apparent even on a cursory examination. ‘ ‘ Bather than await case-by-case excision of the statute’s overbreadth through review of its application to particular conduct, courts invalidate the statute facially so as to end its deterrence of constitutionally protected activity when they conclude that as applied review will be needlessly time-consuming and ineffective. ” (LeFlore v. Robinson, supra, p. 936).
Subdivision (1) provides that the use of sound equipment 1‘ shall be on matters of public interest and concern or religious purposes only.” As pointed out above, discretion is vested in the Commissioner of Police and in the three-man board consisting of the Mayor, Comptroller and President of the Council, to determine if the speech qualifies. This is unconstitutional under Saia v. New York (supra) and LeFlore v. -Robinson (supra). An additional vice of this subdivision is its peculiar susceptibility to arbitrary enforcement. (People v. Katz, 21 N Y 2d 132, 134 [1967].)
While local government can draw a narrow regulation limiting audiblity of sound (Saia v. New York (supra), subdivision (2) of section 1703, in addition to drawing such limits, also limits the sound so ‘1 that said volume is not unreasonable, loud, raucous, jarring, disturbing or a nuisance to persons within the area of audibility.” This language is constitutionally defective on two counts.
Words such as 11 loud, raucous, jarring ” and similar phrases leave the standard of responsibility wide open to interpretation and provide no guidance to men of common intelligence as to what conduct is proscribed. They are thus unduly vague especially in the context of a statute which is reinforced by a penal sanction. (See, generally, Coxy v. Louisiana, 379 U. S. 536 [1965]; Edwards v. South Carolina, 372 U. S. 229 [1963]; Terminiello v. Chicago, 337 U. S. 1 [1949]; Fuller v. Scott, 328 F. Supp. 842 [M. D. N. Car., 1971]; Pritikin v. Thurman, 311 F. Supp. 1400 [S. D. Fla., 1970]; Original Fayette County Civic and Welfare League v. Ellington, 309 F. Supp. 89 [W. D. Tenn., 1970]; and Livingston v. Garmire, 308 F. Supp. 472 [S. D. Fla., 1970].)
The language ‘ ‘ disturbing or a nuisance to persons within the area of audibility ” is likewise unconstitutional since it subjects the right of free speech to an unascertainable standard. (See *430 Coates v. City of Cincinnati, 402 U. S. 611 [1971]; Saia v. New York, supra.)
Similarly, the language “ disturbing to any public gathering lawfully gathered within audible range ” in subdivision (5) is unduly vague and standardless. (Codes v. Cincinnata, supra, p. 614.)
Again, while the government may draw a narrow regulation regarding sound equipment, such regulation must bear some reasonable relation to a valid interest and cannot be arbitrary, especially where a preferred freedom is involved. Subdivision (8), which regulates the duration of speech, does not appear to be related to any valid interest.
In determining whether a public place is appropriate for the exercise of First Amendment rights, it must be determined whether the character of the place, pattern of usual activity, nature of its essential purpose, and population who take advantage of the general invitation extended make it an appropriate place for communication of views on issues of political and social significance. (Wolin v. Port of New York Auth., 392 F. 2d 83 [2d Cir., 1968].) Under these tests, the downtown area of the City of Buffalo is a particularly appropriate place for the communication of views on issues of political and social significance. While the city can prohibit the use of sound equipment on congested streets, it has in this instance prohibited the use of such equipment in the entire downtown area where the seats of government are located.
Subdivision (13) vests discretion in the Commissioner to prevent the use of sound amplifying equipment when he determines that such use will deprive the public of the right to ‘1 safe, comfortable, convenient and peaceful enjoyment of any public street, park or place, for street, park or public purposes, or will constitute a threat to the safety and welfare of the public. ’ ’ However, the case, Wolin v. Port of New York Auth. (supra), held that traffic considerations cannot justify a total prohibition of First Amendment activity.
Finally, subdivision (14), in addition to the constitutional infirmities already noted, requires detailed information five days in advance of the proposed use of the equipment. “ 1 The exercise of the rights of free speech and free assembly cannot be made a crime, nor may those who seek to freely exercise those rights be criminally punished for failure to previously register their intentions with the law enforcement officers, in absence of a situation involving clear and present violence, or threat thereof. Advance notice is impossible where the demonstration results from a spontaneous group desire, and, even where *431 there is sufficient time to give the required notice, the requirement necessarily destroys the feeling of security from official restraint and deters potential marchers from participating. In short, the administration of a dosage of ‘ ‘ preventive medicine ’ ’ is impermissible in connection with First Amendment rights. These rights are susceptible to restriction “ only to prevent grave and immediate danger to [an interest] which the State may lawfully protect ”. ’ ” (LeFlore v. Robinson, supra, p. 948). Thus it certainly appears that unless the State can show some danger that is imminent, arising from the use of such equipment, it may not require advance notice from prospective users.
The type of information required as a precondition to the issuance of a permit would lead one inclined to espouse a conspiratorial view of history to conclude that the ordinance was written with the express purpose of chilling the applicant’s and prospective applicant’s right of free speech.
For example, subdivision (14) (f) requires disclosure of the names and addresses of all persons who will use and operate the equipment. It has been held that the State may not require advance disclosure of the identity of speakers at a lawful public assembly involving no grave or immediate danger to an interest the State is entitled to protect. (Robinson v. Coopwood, 292 F. Supp. 926 [N. D. Miss., 1968], affd. 415 F. 2d 1377 [5th Cir., 1969] citing Thomas v. Collins, 323 U. S. 516, 539 [1945].) Yet there is no showing of any compelling interest to be protected by the disclosure required by this section.
The same defect is present to an even greater extent in subdivision (14) (h) which requires general disclosure of the subject matter to be broadcast. Especially where the discretion is vested in the Commissioner, such a provision is an invitation to an arbitrary and discriminatory decision. (People v. Katz, supra.) The chilling effect of such a provision is too plain to require anything more than this statement. (Cf. LeFlore v. Robinson, supra, p. 948.)
Similarly the provisions requiring attachment of the police records of all applicants to the permit seems to serve no purpose but to deter citizens in the exercise of their rights of free speech via the use of sound amplifying equipment.
Finally, subdivision (14) imposes an absolute proscription on the use of sound equipment by or under the auspices of persons convicted of disorderly conduct or a crime. Such a provision, especially as it affects persons convicted of crimes, is unconstitutional for it fails to comply with the requirement for a showing of a clear and present danger before First Amendment rights can be so seriously abridged. The disability is permanent. Such *432 a person could be totally rehabilitated and still suffer such disability. The provision does not even attempt to relate the type of offense the person was guilty of to the interest being protected. In the context of parolees who are still considered to be in custody, the United States District Court for the Southern District of New York in Sobell v. Reed (327 F. Supp. 1294), held that the parolee’s right of free speech cannot be infringed without some showing of a clear and present danger. That consideration applies all the more to one discharged.
Since section 1703 suffers from numerous constitutional infirmities, it follows that failure to comply with its provisions cannot be the basis of a conviction and penal sanction. Therefore, this court holds that section 5 (1) of chapter IX, insofar as it was used to enforce section 1703, was applied unconstitutionally.
Defendant’s conviction is reversed on the law. The information below is dismissed and the restitution of the fine paid is hereby directed.