114 So.2d 316 (1959)
CITY OF ST. PETERSBURG, Petitioner,
v.
Marion CALBECK and Mary E. Calbeck, Respondents.
No. 1387.
District Court of Appeal of Florida. Second District.
August 28, 1959.
*317 Carl R. Linn, Lewis T. Wray, Harry I. Young, Frank D. McDevitt, St. Petersburg, for petitioner.
McClure & Turville, St. Petersburg, for respondents.
ALLEN, Chief Judge.
This case comes before this court as a petition for writ of certiorari to review the judgment of the Circuit Court of Pinellas County reversing the judgment of the Municipal Court of St. Petersburg, which held the respondents guilty of disorderly conduct.
The respondents were convicted in the Municipal Court of St. Petersburg on the charge that they:
"Did unlawfully commit disorderly conduct, in that he (she) did engage in a fight, quarrell or other disturbance in the City."
Bills of particulars were given to respondents and after hearing, the judgment of guilty was entered and fines of $50 each were levied and suspended.
An appeal was taken to the circuit court and on June 4, 1959, the circuit judge entered an order reversing the judgment on the grounds that the ordinance under which the respondents were tried and convicted as unconstitutional in that it violated Section 11 of the Declaration of Rights of the Constitution of Florida, F.S.A.
The assignments of error in the lower court did not question the constitutionality of the ordinance in question. The circuit judge, however, based his decision solely on the constitutional question so the sole question before this court is whether or not the ordinance in question is unconstitutional and therefore invalid as in violation of section 11 of the Bill of Rights of the Florida Constitution.
Section 34, Article V, of the Florida Constitution 1955 provided:

*318 "The Legislature may establish in incorporated towns and cities courts for the punishment of offenses against municipal ordinances."
Section 11, Declaration of Rights, provides:
"In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face, and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him."
In comparing the language of these provisions, the Supreme Court stated in Wright v. Worth, 83 Fla. 204, 91 So. 87, 88:
"The language of section 11 of the Declaration of Rights is so different from that of section 34 of article 5, that it is manifest the words `criminal prosecutions * * * in the county where the crime was committed' in section 11, Declaration of Rights have no reference to `the punishment of offenses against municipal ordinances' under section 34 of article 5." See also State ex rel. Sellars v. Parker, 87 Fla. 181, 100 So. 260.
The St. Petersburg Charter (Chapter 15505, Special Acts of 1931) provides in part at section 11(e):
"The Municipal Judge or any Associate Municipal Judge shall have power to try all cases involving violations of the City Charter and ordinances, and for such violations to impose such penalties or fines as may be prescribed by ordinance, and shall have power to try cases upon information filed by the City Attorney or associate City Attorney, or upon affidavit filed by the complaining witness..."
The respondent contends that the ordinance is too vague in its definition of what conduct would constitute "disorderly conduct."
In State v. Reynolds, 1954, 243 Minn. 196, 66 N.W.2d 886, 889, the Supreme Court of Minnesota was confronted with whether a criminal statute which provides that every person who engages in brawling or fighting shall be guilty of disorderly conduct is so vague or indefinite as to violate federal and state guarantees of due process. In upholding the constitutionality of the statute the Court stated:
"The term `disorderly conduct' is a more comprehensive term than breach of the peace. It is broader and more inclusive than breach of the peace or nuisance. The word `disorderly' is a word that is almost self-explanatory as it is ordinarily used. When used in a legal sense it has a well-established meaning relating to the public peace and good order. When the term is used in relation to public offenses it means that a situation over which the individual has control is not being regulated by the restraint of morality; that compliance with the restraints of good order and law is lacking. `Disorderly conduct' generally means some act which tends to breach the peace or to disturb those people who may hear or see it. For a person to be guilty of disorderly conduct the public or some member thereof must be disturbed. It is generally considered that disorderly conduct embraces certain minor offenses defined by statute or ordinance to consist in disturbances of the peace and quiet of the public, the community, families, or a class of persons, or in conduct which tends to provoke breach of the peace or to corrupt public morals."
The order of the lower court holding petitioner-city's ordinance unconstitutional does not state the grounds or basis for such declaration. Apparently, the reason *319 was that the conduct was not adequately defined so as to comply with the portion of section 11, Declaration of Rights that states:
"* * * to demand the nature and cause of the accusation against him, * * *"
It is obviously impossible in an ordinance of this type to specify and itemize all of the acts which would constitute disorderly conduct. The question as to whether a particular act is disorderly conduct depends on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances. 27 C.J.S. Disorderly Conduct § 1(2).
In 4 Fla.Jur. 597, Breach of the Peace and Related Offenses, § 2, it is provided:
"In general terms, a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace, or, as sometimes said, it includes any violation of any law enacted to preserve peace and good order. The term disorderly conduct has been construed as embracing all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts. Disorderly conduct may in many cases be a breach of the peace, but it is not necessarily so.
"Although there are no Florida statutes defining or proscribing a breach of the peace or disorderly conduct as such, there are several statutes penalizing acts which fall within the generally accepted concept of a breach of the peace or disorderly conduct which are discussed in the following sections.
"In addition to the offenses expressly discussed herein, other acts or conduct which might be regarded as breaches of the peace or disorderly conduct are parades, the utterance of abusive or profane language, and loud, disturbing, and obnoxious noises."
This problem is also discussed in McQuillin, Municipal Corporations, 3rd ed., section 24.99 wherein is stated:
"It is not possible to define comprehensively `disorderly conduct' any more than it is possible to define comprehensively misdemeanors, nuisances, police power or insulting words; each case turns upon its facts, to be judicially determined. (Cases omitted)"
As stated by the text in 17 Am.Jur., Disorderly Conduct, sec. 1:
"It is common practice for legislatures to authorize municipal authorities to punish acts which constitute disorderly conduct. The condition of society in cities is such as to call for more stringent regulations than those usually provided for the state at large. It is generally held that such authority, usually by statute or charter, does not limit the municipality to regulation of acts which are disorderly conduct under state law, but permits the municipality to pass ordinances prescribing as disorderly conduct acts not so defined by state law." (See cases cited therein.)
In order to satisfy the constitutional requirement of due process, a statute or ordinance creating and defining an offense must be a reasonable exercise of power possessed by the state or municipal legislative body enacting it, and must not arbitrarily state that certain acts inherently and generally innocent shall constitute criminal offenses. Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406; Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33; Griffin v. Sharpe, Fla. 1953, 65 So.2d 751; and Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Co., Fla.App. 1958, *320 100 So.2d 67. Likewise, the ordinance or statute must be sufficiently explicit in its description of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty, and make known to those to whom it applies what conduct on their part will render them liable for its penalties. 16A C.J.S. Constitutional Law § 580; Ex parte Hawthorne, 116 Fla. 608, 156 So. 619, 96 A.L.R. 572; Brock v. Hardie, 114 Fla. 670, 154 So. 690. A statute or ordinance which fulfills the foregoing requirements does not deny due process of law, even though it is not confined to a definition of specific acts. Matteson v. City of Eustis, 140 Fla. 591, 190 So. 558; Poole v. State, 129 Fla. 841, 177 So. 195, appeal dismissed, 303 U.S. 619, 58 S.Ct. 611, 82 L.Ed. 1084.
Impossible standards are not required, however, statutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices satisfies due process. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877.
An ordinance similar to the ordinance in the instant case was declared valid by the Supreme Court in State ex rel. Green v. Capehart, 138 Fla. 492, 189 So. 708, 709. The respondent's ordinance is actually an abbreviated form of the ordinance involved in the Capehart case, and in passing upon the validity of the ordinance the Supreme Court stated:
"We think the Ordinance is valid and that the charges embraced in the affidavits are sufficient to withstand an attack by habeas corpus proceedings."
Upon the basis of the principles discussed from texts and other jurisdictions considered in light of the Florida cases, the ordinance complies with requirements of the organic due process prescribed by the Constitution for ordinances of this type, so we grant certiorari and quash the judgment of the circuit court holding the ordinance involved unconstitutional.
SHANNON, J., and LOVE, WILLIAM K., Associate Judge, concur.