286 So.2d 4 (1973)
Jonathan BRADSHAW, Appellant,
v.
STATE of Florida, Appellee.
No. 43721.
Supreme Court of Florida.
November 21, 1973.
*5 Phillip A. Hubbart, Public Defender, and Lewis S. Kimler, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
This is an appeal from a judgment of the Circuit Court of Dade County, Florida, adjudging the defendant guilty of disorderly conduct, resisting an officer, and assault and battery. The Circuit Court directly passed on the validity of Fla. Stat. § 877.03, Disorderly Conduct, F.S.A.
Patrolman Chisolm, along with four other officers, was working off duty, but in uniform, as a security guard for a carnival being held at a shopping center. At approximately 9:00 or 10:00 p.m., the officer evicted several negro males from the carnival for causing a disturbance. Officer Chisolm saw the defendant approach those who had been evicted and start talking with them. After a few minutes, the defendant and the persons evicted walked toward the officer. Defendant identified himself as a youth coordinator and stated that he worked with those who were evicted on a day-to-day basis knowing them personally. Defendant then questioned the officer as to why they had been evicted. A large crowd began to gather. At this point the testimony conflicts as to what then transpired, but Officer Chisolm testified as follows:
"Q. What did you do then, if anything?
"A. At that time, I again explained the situation to him and asked him would he also please leave. After I had asked the people that he had brought back in with him to leave again, Mr. Bradshaw then became very loud and talked in a very loud voice that started to draw a crowd of people, that were starting to gather around.
"Q. At this time, did you have any conversation with Mr. Bradshaw?
"A. I was continually asking him to please fully leave and take the youths that he brought back with him to leave, so there wouldn't be any trouble. He stated that, something to the effect that, `You people are always picking on us, you won't let us do anything,' and he started talking in a very loud voice, as I stated, and more people were beginning to gather. I estimate a hundred to a hundred fifty people... .
"Q. (By Mr. Rogers) Officer, did the defendant say anything in particular to you at this time, when you told him to leave?

*6 "A. Yes, it was a statement that I based my initial arrest on. He stated, in a very loud voice, yelling, that `You white mother fuckers ain't going to make us leave.' At that point, I arrested him for disorderly conduct by use of profane language, and unknown to me, the other four officers were on the outside of the crowd, the outskirts of the crowd. I alone was in the middle, talking to Mr. Bradshaw.
"Q. Officer, approximately how many people, to the best of your ability, were gathered around you at that time?
"A. Approximately 100 to 150.
"Q. Were these white people or black people or both, to the best of your knowledge?
"A. Predominantly black." (Tr. pp. 7-9)
This testimony was corroborated by that of Officer Robert J. Baker and Officer Martin Mathews.
A marked patrol unit, which had been called by the officers at the outskirts of the crowd, pulled up approximately ten yards away from Officer Chisolm in the parking lot. As he saw the vehicle, Officer Chisolm advised defendant that he was under arrest and asked him to step towards the patrol vehicle. When defendant refused to do this, the officer took his arm and, as he attempted to lead defendant toward the vehicle, defendant turned and struck the officer on the shoulder. A scuffle ensued. The other four officers, who were at the outskirts of the crowd, came into the crowd to assist Officer Chisolm. They forced defendant into the vehicle as he was screaming, "Don't let the policeman take me to jail." The crowd was becoming very loud and attempted to come to defendant's aid at one point. The police vehicle left with the defendant; and Officer Chisolm, with the assistance of the other officers, disbursed the crowd. Officer Chisolm then went to the jail where another altercation occurred, and four officers were required to subdue the defendant and place him in a cell.
Defendant was charged by information with (1) disorderly conduct; (2) resisting officer with violence to his person; (3) assault and battery; (4) assault and battery; (5) assault and battery; and (6) assault and battery. The defendant, an indigent with appointed counsel, pleaded not guilty and waived trial by jury. At trial, the Court granted defendant's motion for judgment of acquittal on counts three, four and six. Defendant was found guilty of counts one, two and five. He was adjudged guilty, and after a pre-sentence investigation was sentenced. Motion for a new trial was denied, and defendant filed a notice of appeal.
Defendant contends first that the trial court erred in denying defendant's motion to dismiss count one on the ground that Florida's disorderly conduct statute Fla. Stat. § 877.03, F.S.A., is unconstitutional due to vagueness and overbreadth in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution.
Fla. Stat. § 877.03, F.S.A., reads as follows:
"Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083."
Defendant refers to Severson v. Duff, 322 F. Supp. 4 (M.D.Fla., 1970), which held that the statute suffered from the constitutional defects of vagueness and overbreadth. It is axiomatic that a decision of a federal trial court, while persuasive if well-reasoned, is not by any means binding on the courts of a state. Virginia-Carolina *7 Chemical Corporation v. Smith, 121 Fla. 720, 164 So. 717 (1935); Stonom v. Wainwright, 235 So.2d 545 (Fla.App.1st, 1970). See also Miles Laboratories v. Eckerd, 73 So.2d 680 (Fla. 1954); 8 Fla. Jur., Courts, §§ 173, 175.
Since the Severson decision, we have held Fla. Stat. § 877.03, F.S.A., to be constitutional in that the language meets the test of common understanding. State v. Magee, 259 So.2d 139 (Fla. 1972). We pointed out that not every detail is required to be set forth in the statute so long as the prohibitive conduct is in such language that it is understood by the average citizen.
The statute was also attacked on constitutional grounds in In re Fuller, 255 So.2d 1 (Fla. 1971). Although we held that the statute was unconstitutional when applied to the facts in that particular case, the opinion by Justice Ervin, speaking for the Court, went on to say:
"Furthermore, we are not as confident as Appellant that when and if the exact question of the constitutionality vel non of Section 877.03 is decided by the Supreme Court of the United States it will be found unconstitutional. Florida courts in recent years have upheld statutes employing general language similar in nature to the language in Section 877.03, and these decisions have not been overturned by the nation's highest court. See City of St. Petersburg v. Calbeck, Fla.App., 114 So.2d 316, text 319 and 320; McArthur v. State, Fla. 1966, 191 So.2d 429; Johnson v. Florida, 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838; Smith v. State, Fla. 1970, 237 So.2d 139, and Smith v. State, Fla. 1970, 239 So.2d 250." (p. 3)
It appears that our decision in State v. Magee, supra, holding the statute constitutional, conforms with the reasoning of the United States Supreme Court. For example, in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the United States Supreme Court considered a Kentucky statute which stated:
"(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
......
"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse... ." 407 U.S. 104, 108, 92 S.Ct. 1953, 1956, 32 L.Ed.2d 584, 589.
The Court held that the statute was not impermissibly vague or broad, saying:
"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: `We believe that citizens who desire to obey the statute will have no difficulty in understanding it... .' Colten v. Commonwealth, 467 S.W.2d, at 378... .
"Individuals may not be convicted under the Kentucky statute merely for expressing unpopular or annoying ideas. The statute comes into operation only when the individual's interest in expression, judged in the light of all relevant factors, is `miniscule' compared to a particular public interest in preventing that expression or conduct at that time and place." 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584, 590.
In the factual situation, subjudice, the disorderly conduct statute came into operation only when defendant Bradshaw's interest in expression, judged in the light of all the relevant factors, was "miniscule" compared to a particular public interest in preventing that expression or conduct. The particular public interest was obvious: to prevent the possibility of a riot erupting resulting in injury to innocent *8 bystanders. The atmosphere surrounding the incident is always relevant. It was nighttime at a carnival and over 100 people of mixed race had gathered around the officers. Clearly, the incident could have been explosive. Therefore, although the words were similar, the time, place and circumstances were quite different from those in In re Fuller, supra, where this Court held that the disorderly conduct of the defendant therein did not create or reach proportions violative of the applicable sanctions of the statute. As the statute has been construed by this Court, a crime is committed only where there is no bona fide intention to exercise a constitutional right.
In Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1950), the United States Supreme Court upheld the disorderly conduct conviction of a student who addressed a crowd through a loudspeaker making derogatory remarks concerning political officials and giving "the impression that he was endeavoring to arouse the negro people against the whites." In upholding the conviction, the Court stated:
"It is one thing to say that the police cannot be used as an instrument for the suppression of unpopular views, and another to say that, when as here the speaker passes the bounds of argument or persuasion and undertakes incitement to riot, they are powerless to prevent a breach of the peace. Nor in this case can we condemn the considered judgment of three New York courts approving the means which the police, faced with a crisis, used in the exercise of their power and duty to preserve peace and order." 340 U.S. 315, 321, 71 S.Ct. 303, 306, 95 L.Ed. 295, 321.
In the case sub judice, the defendant Bradshaw passed the bounds of argument and undertook incitement to riot. Certainly, the police had the authority and power to prevent a breach of the peace.
An excellent discussion of federal cases is contained in City of St. Petersburg v. Waller, 261 So.2d 151 (Fla. 1972), wherein this Court, speaking through Justice Boyd, upheld a city ordinance prohibiting verbal assault, as well as physical or bodily assault on a police officer in the performance of his duties. In that case, the defendant, as a police car approached a group gathered at a corner, stepped into the street, thrust his amplified megaphone close to the window of the police car, and yelled "pig." This Court held that under the circumstances the language had no significance than to arouse the crowd into action against the police officer.
In seeking a reversal of the "resisting an officer" charge, defendant says that he had the right to resist "with appropriate force the violent acts of the arresting officer due to the fact that the arrest was unlawful from its inception in that it was based on an unconstitutional and invalid statute." Having concluded that the statute meets constitutional muster, it is unnecessary to consider this contention. Parenthetically, the record does not disclose that the officer used excessive force or engaged in "violent acts" while arresting the defendant.
The judgment of the lower trial court is affirmed.
CARLTON, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
BOYD, J., dissents with opinion, in which ERVIN, J., concurs.
BOYD, J., Dissenting.
I dissent. I would hold the disorderly conduct statute unconstitutional for reasons which will be more fully explicated in my dissent in Gonzales v. Belle Glade and Smith and Sweet v. State, 287 So.2d 669 (Fla. 1973).
ERVIN, J., Concurs.