287 So.2d 669 (1973)
Iva Nelson GONZALES, Appellant,
v.
CITY OF BELLE GLADE, Appellee. Gloria Smith and Rudolph Sweet, Appellants,
v.
State of Florida, Appellee.
Nos. 42530, 42478.
Supreme Court of Florida.
December 20, 1973.
*670 Eric J. Haugdahl, Florida Rural Legal Services, Jacksonville, for appellant, Gonzales.
Kent Spriggs, Tallahassee, for appellants, Smith and Sweet.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee, City of Belle Glade.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellee, State of Florida.
ADKINS, Justice.
Iva Nelson Gonzales, hereinafter referred to as "Gonzales," appeals from a judgment of conviction entered by the Municipal Court of the City of Belle Glade, Florida. Gloria Smith and Rudolph Sweet, hereinafter referred to as "Smith and Sweet," appeal from a judgment of conviction entered by the County Judge's Court of Jackson County, Florida. Both trial courts passed upon the validity of Fla. Stat. § 877.03, F.S.A. We have jurisdiction. Fla. Const., art. V, § 3(b)(1), F.S.A.
This Court has consistently upheld the validity of the challenged statute, most recently in Bradshaw v. State, 286 So.2d 4 (op. filed November 21, 1973), and prior thereto in State v. Magee, 259 So.2d 139 (Fla. 1972). Nothing has occurred to warrant receding from these opinions.
The entire records and transcripts in both cases demonstrate that the convictions must be reversed due to the unconstitutional application of the disorderly conduct statute. In order for the statute to be constitutionally applied, it must be proved that some act on the part of the accused either corrupted the public morals, outraged the sense of public decency, affected the peace and quiet of persons who witnessed the conduct of the accused, or that the accused engaged in brawling or fighting, or engaged in conduct constituting a breach of the peace or disorderly conduct. As to what constitutes a "breach of the peace" or "disorderly conduct," any factual situation can be viewed in light of the common law meaning of those terms. This Court has consistently held that statutes should be read in the light of the common law. Nolan v. Moore, 81 Fla. 594, 88 So. 601 (1921); Meeks v. Johnston, 85 Fla. 248, 95 So. 670 (1923), and Ellis v. Brown, 77 So.2d 845 (Fla. 1955).
All that appears from the record  taken in the light most favorable to the State and the City  is that Smith and Sweet participated in a protest march, that both made threatening comments to police officers, and that Gonzales was vocally dissatisfied with the service afforded her and her companions in an eating establishment. There was no evidence that Smith or Sweet struck or even touched a police officer, that they actually offered a physical threat to any officer, or that they violated any law. Likewise, there was no evidence of any wrongdoing by Gonzales with the possible exception of the utilization of an intemperate expletive or two. In neither case was there any evidence that the actions of any of the appellants were more than annoying to those around them, and a violation of Fla. Stat. § 877.03, F.S.A., requires more than the creation of a mere annoyance.
These cases are reversed on the basis of the failure of the State and the City of Belle Glade to prove actions on the part of the appellants which would constitute violations of Fla. Stat. § 877.03, F.S.A. In *671 light of this finding, it is improper to reach the issue of constitutionality vel non. Finch v. Fitzpatrick, 254 So.2d 203 (Fla. 1971).
For the foregoing reasons, the judgments of the trial courts are reversed and the causes are remanded for further proceedings not inconsistent with the views expressed herein.
It is so ordered.
ROBERTS, Acting C.J., McCAIN and DEKLE, JJ., and DREW, Justice Retired, concur.
ERVIN, J., specially concurs.
BOYD, J., concurs in part and dissents in part with opinion, in which ERVIN, J., concurs.
ERVIN, Justice (specially concurring):
I concur with Justice Boyd that the subject ordinances are unconstitutional. I thoroughly agree with Justice Adkins that the application of the ordinances to the facts in these cases is unconstitutional, no disorderly conduct appearing.
BOYD, Justice (concurring in part, dissenting in part):
I concur with that part of the majority opinion which finds no evidence, in either of these consolidated cases, to indicate a breach of the peace or disorderly conduct on the part of the appellants, and which reverses the convictions and remands the causes for further proceedings.
I dissent to the portion of the majority decision which reads as follows:
"This Court has consistently upheld the validity of the challenged statute, most recently in Bradshaw v. State, 286 So.2d 4 (op. filed November 21, 1973), and prior thereto in State v. Magee, 259 So.2d 139 (Fla. 1972). Nothing has occurred to warrant receding from these opinions."
While I concurred with the majority in State v. Magee, supra, I dissented in our most recent case of Bradshaw v. State, supra. Contrary to the majority's statement that, "Nothing has occurred to warrant receding from these opinions," I believe that a great deal has occurred, all of it warranting a change in results. I refer to the rendition of three cases by the Supreme Court of the United States, which I will deal with in detail in the body of my dissent, and which clearly prohibit the enactment of statutes such as that under attack today.

I. Florida, Pre-Papachristou

The appellants' contentions, as regards the vagueness and overbreadth of the statute, mirror those presented by the appellant in In re Fuller.[1] Consequently, this is not a novel question before this Court. In Fuller, although the appellant attacked the statute on its face,[2] this Court did not *672 reach that issue because it found for the appellant that the statute was unconstitutional as applied to the facts of the case. The Court did, however, take occasion to give some indication of its views as to the statute's facial constitutionality:
"Furthermore, we are not as confident as Appellant that when and if the exact question of the constitutionality vel non of Section 877.03 is decided by the Supreme Court of the United States it will be found unconstitutional. Florida Courts in recent years have upheld statutes employing general language similar in nature to the language in Section 877.03, and these decisions have not been overturned by the nation's highest court."[3]
This Court did have occasion to pass on the facial constitutionality of the statute in State v. Magee.[4] In Magee, in reversing the trial judge's holding that the verbiage, "whoever commits such acts as are of a nature to corrupt the public morals or outrage the sense of public decency," was unconstitutional, we said:
"We find that the language does meet the test of common understanding [and] is constitutional... ."
"... [N]ot every detail is required to be set forth in such a statute so long as the prohibitive conduct is in such language that it is understood by the average citizen. The terms `public decency' and `corrupt the public morals' are terms of general understanding... ."
"Under such generally understood language, the specific conduct will of course vary and is made fully known to a defendant in the charges filed against him, so that he is made aware against what conduct he must defend."[5]

II. The Impact Of Papachristou, et al.

In retrospect, this Court was eminently correct in its approach to the statute, in both the Fuller and Magee decisions, in view of the then existing state of the law. So, too, was the learned trial judge in the instant case, in applying Fuller and Magee as the controlling Florida precedent. However, both Fuller and Magee were decided *673 prior to the landmark companion cases of Papachristou v. City of Jacksonville[6] and Smith v. Florida,[7] decided by the Supreme Court of the United States on February 24, 1972, and in light of the expressions in those and other decisions,[8] I have concluded that the time is ripe for reconsideration of our position on the statute.
Papachristou held that the Jacksonville vagrancy ordinance[9] was void for vagueness, both in the sense that it failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by the ordinance,[10] and because it encouraged arbitrary and erratic arrests and convictions.[11] One month later, the *674 Supreme Court indicated that Papachristou and Smith were not narrow decisions or aberrations, but rather were the current general approach to statutes of this genre. In Gooding v. Wilson,[12] a Georgia criminal statute,[13] punishing the use of abusive language tending to cause a breach of the peace, was held facially unconstitutional under the First and Fourteenth Amendments, where it was determined that the Georgia State Courts had not limited and construed the statute as applying only to "fighting words".[14] It would thus appear that the underpinnings for this Court's position in both Fuller and Magee have been removed; reading the language of Section 877.03 in pari materia with that of the Jacksonville vagrancy ordinance and the Georgia statute,[15] and noting the strong condemnations of the latter two provisions by the Supreme Court of the United States,[16] it would appear that, as a result *675 of the commands of Papachristou, Smith v. Florida, and Gooding v. Wilson, Section 877.03 can no longer pass constitutional muster. We should therefore hold Section 877.03, Florida Statutes, 1971, F.S.A., vague and overbroad, and unconstitutional on its face.[17]

III. Does Florida Need A Breach Of Peace/Disorderly Conduct Statute?
If this writer's position had prevailed, the Legislature would be, of course, free to re-enact a new breach of the peace/disorderly conduct statute, within the foregoing constitutional limitations. In Franklin v. State, supra, this Court gave the Legislature precisely such a mandate:
"This statute and others ... need immediate legislative review and action. We urgently commend this important area of great social concern for appropriate remedial legislation."
"Legislative action is long past due in this and related fields... . The courts would much prefer appropriate legislative action, where proper conditions and restraints can be set forth. We strive to observe the delineation of our branches of government, but in the case before us here there is no doubt on its face that this statute as worded cannot withstand the constitutional onslaught and must fall. We are thoroughly in accord with upholding proper statutes, but a court must guard equally against those which offend constitutional standards and which constitute an infringement by the state upon the private rights of citizens... ."
"We anticipate and recommend legislative study of the subject... ."[18]
In a similar situation, I note that less than eight months elapsed between the decision of the Supreme Court of the United *676 States in Smith v. Florida,[19] and the Legislature's enactment of a constitutionally permissible substitute for the voided Florida vagrancy law.[20]
Of course, the problem with any such statute, as this Court noted in City of St. Petersburg v. Calbeck,[21] is that:
"... . The question as to whether a particular act is disorderly conduct depends on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances."
"It is not possible to define comprehensively `disorderly conduct' any more than it is possible to define comprehensively misdemeanors, nuisances, police power or insulting words; each case turns upon its facts, to be judicially determined."[22]
The problem with this difficulty in definition is that, as a result of this and other Courts' evolving interpretations of the statute, breach of the peace/disorderly conduct has become, in effect, a necessarily included lesser offense to almost every crime in this State. That is, an examination of past Florida cases concerning this statute reveals that, in those cases in which breach of the peace/disorderly conduct convictions have been upheld, the facts of each case, coincidentally or not, encompassed precisely the elements of a violation of some specific criminal law;[23] in those cases where such convictions were overturned, coincidentally or not, the Courts were unable to find violation of any specific criminal law.[24]
In his dissent in Smith v. State,[25] this writer discussed the reason for the existence of, and the need for, Florida's vagrancy law. The conclusions then drawn apply with equal vigor to the instant case:
"... [These] statutes have been widely used by police authorities to hold people remotely suspected of crime while investigations were conducted. Modern interpretations of individual civil rights under state and federal constitutions clearly prohibit this now. If one is engaging in unlawful conduct the State should charge the person with violating a specific law. There is certainly no shortage of criminal laws."[26]
*677 For the foregoing reasons, I would reverse the judgments of the trial courts, but without prejudice, so that the prosecution could re-try any one or all three of the appellants under any other municipal ordinances or state statutes which their conduct may have violated.[27]
I therefore dissent to the majority opinion.
ERVIN, J., concurs.
NOTES
[1] 255 So.2d 1, 2 (Fla. 1971):

"He contends the statute is not phrased in terms sufficiently definite and that men of common intelligence will have to guess at its meaning... . He further contends the statute fails to warn persons that certain conduct is criminal, setting the stage for arbitrary police action and permitting police and prosecutors to evolve their own standards of conduct for citizens... .
"Appellant further contends the language in the statute proscribing `* * * such acts as * * * affect the peace and quiet of persons who may witness them * * *' is void for overbreadth... . He contends the statute is of the genre of statutes that have been stricken because they create a `license for the jury [or trial court] to create its own standards' and the making of subjective judgments by police and prosecutors... ."
(Citations omitted.)
[2] Said statute had previously been held unconstitutional on its face for vagueness and overbreadth in Federal Court. Severson v. Duff, 322 F. Supp. 4 (M.D.Fla. 1970).
[3] 255 So.2d at 3. Fuller relied on Johnson v. Florida, 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968); Smith v. State, 239 So.2d 250 (Fla. 1970); Smith v. State, 237 So.2d 139 (Fla. 1970); McArthur v. State, 191 So.2d 429 (Fla. 1966), and City of St. Petersburg v. Calbeck, 114 So.2d 316 (Fla. App.2d 1959). Johnson, a precursor of Papachristou (see infra), involved an attack upon the Florida vagrancy statute. The Court, however, did not reach the question of constitutionality, finding that "the record is lacking in any evidence to support the judgment." Smith I was the lower court case of Smith v. Florida (see notes 7 and 9, infra). Smith II concerned a state statute making it unlawful to operate a motor vehicle at a speed greater than that which is reasonable and prudent under existing conditions, having regard to actual and potential hazards there existing  obviously, such a "reasonable man" standard could be easily established by expert testimony, such as that of an accident investigation specialist. McArthur involved a state statute which prohibited a person from driving under the influence of intoxicating liquor, when affected to the extent that his normal faculties are impaired  again, the possible use of expert testimony, and chemical tests, to establish a standard is an obvious distinguishing factor. As to Calbeck, see notes 21-23, infra.
[4] 259 So.2d 139 (Fla. 1972).
[5] Id. at 140-141. (Footnote omitted). Magee relied on Chesebrough v. State, 255 So.2d 675 (Fla. 1971); Campbell v. State, 240 So.2d 298 (Fla. 1970); Smith v. State, 237 So.2d 139 (Fla. 1970), and, McArthur v. State, 191 So.2d 429 (Fla. 1966). Chesebrough involved prosecution for lewd and lascivious behavior in front of a minor, to-wit: a couple's intercourse in front of their fourteen year old son. The statute was found to contemplate, "gross indecency with respect to sexual relations," and, "an unlawful indulgence in lust, eager for sexual indulgence"  terms drawn a bit more narrowly than those in the instant statute. Campbell, a prosecution under the statute preventing torturing or unlawfully punishing children, concerned itself with the definition of the phrase, "unnecessarily or excessively chastise." There we said, "[T]he particular words ... are not so vague when considered in the context of the entire Statute and with a view to effectuating the purpose of the act." As to Smith and McArthur, see note 3, supra.
[6] 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).
[7] 405 U.S. 172, 92 S.Ct. 848, 31 L.Ed.2d 122 (1972).
[8] See, e.g. Gardner v. Ceci, 312 F. Supp. 516 (E.D.Wis. 1970); Pritikin v. Thurman, 311 F. Supp. 1400 (S.D.Fla. 1970); Gordon v. Schiro, 310 F. Supp. 884 (E.D.La. 1970); Phillips v. Borough of Folcroft, Pennsylvania, 305 F. Supp. 766 (E.D.Pa. 1969). See also note 2, supra.
[9] Jacksonville Ordinance Code § 26-57 provided: "Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill frame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants... ." 405 U.S. at 156, 92 S.Ct. at 840. Smith v. Florida, supra, vacated and remanded for reconsideration in light of Papachristou, involved the Florida vagrancy statute, Section 856.02, Florida Statutes, 1971, F.S.A., which was essentially identical to the Jacksonville Ordinance.
[10] "This ordinance is void for vagueness, both in the sense that it `fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' ... and because it encourages arbitrary and erratic arrests and convictions. * * *

"Living under a rule of law entails various suppositions, one of which is that `All [persons] are entitled to be informed as to what the State commands or forbids.'... .
"... [A] well-recognized group of cases ... [insists] that the law give fair notice of the offending conduct.
"The poor among us, the minorities, the average householder are not in business and not alerted to the regulatory schemes of vagrancy laws; and we assume they would have no understanding of their meaning and impact if they read them. Nor are they protected from being caught in the vagrancy net by the necessity of having a specific intent to commit an unlawful act." (Citations omitted.) 405 U.S. at 161-163, 92 S.Ct. at 843.
[11] "... . It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."... .

"... . Here the net cast is large, not to give the courts the power to pick and choose but to increase the arsenal of the police... ."
"... . Where the list of crimes is so all-inclusive and generalized as that one in this ordinance, those convicted may be punished for no more than vindicating affronts to police authority: `The common ground which brings such a motley assortment of human troubles before the magistrates in vagrancy-type proceedings is the procedural laxity which permits `conviction' for almost any kind of conduct and the existence of the House of Correction as an easy and convenient dumping-ground for problems that appear to have no other immediate solution.'"... .
"Another aspect of the ordinance's vagueness appears when we focus, not on the lack of notice given a potential offender, but on the effect of the unfettered discretion it places in the hands of the Jacksonville police... ."
"A direction by a legislature to the police to arrest all `suspicious' persons would not pass constitutional muster. A vagrancy prosecution may be merely the cloak for a conviction which could not be obtained on the real but undisclosed grounds for the arrest... . `It would be in the highest degree unfortunate if in any part of the country those who are responsible for setting in motion the criminal law should entertain, connive at or coquette with the idea that in a case where there is not enough evidence to charge the prisoner with an attempt to commit a crime, the prosecution may, nevertheless, on such insufficient evidence, succeed in obtaining and upholding a conviction'" ... [for vagrancy].
"... . Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for `harsh and discriminatory enforcement by prosecuting officials, against particular groups deemed to merit their displeasure.'... ." 405 U.S. at 165-170, 92 S.Ct. at 845. (Citations and Footnotes omitted.)
[12] 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).
[13] Georgia Code § 26-6303 provided: "Any person who shall, without provocation, use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace ... shall be guilty of a misdemeanor." 405 U.S. at 519, 92 S.Ct. at 1104.
[14] "The constitutional guarantees of freedom of speech forbid the States from punishing the use of words or language not within `narrowly limited classes of speech.'... . Even as to such a class, however, because `the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn,' ... `[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom,'.... In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. `Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.'... .

"Georgia appellate decisions have not construed § 26-6303 to be limited in application, as in Chaplinsky, to words that `have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.'"
"Georgia appellate decisions construing the reach of `tendency to cause a breach of the peace' underscore that § 26-6303 is not limited, as appellant argues, to words that `naturally tend to provoke violent resentment.'"
"Moreover ... the Court of Appeals, in applying another statute, adopted from a text book the common law definition of `breach of peace.'
"`The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community... . By "peace," as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members.'"
"This definition makes it a `breach of peace' merely to speak words offensive to some who hear them, and so sweeps too broadly... . "[H]ow infinitely more doubtful and uncertain are the boundaries of an offense including any "diversion tending to a breach of the peace"' ... ."
"Accordingly we agree with the District Court ... conclusion that § 26-6303, as construed, does not define the standard of responsibility with requisite narrow specificity... . [W]e [have] held that `to make an offense of conduct which is "calculated to create disturbances of the peace" leaves wide open the standard of responsibility.'... . [One] statute struck down included as an element congregating with others `with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby.'... .
"We conclude that `[t]he separation of legitimate from illegitimate speech calls for more sensitive tools than [Georgia] has supplied.' ..." 405 U.S. at 520-528, 92 S.Ct. at 1106. (Citations omitted.)
[15] See notes 9 and 13, supra.
[16] See notes 10 and 11, supra, and note 14, supra respectively.
[17] Such a decision would also find support in Florida case law. See Franklin v. State, 257 So.2d 21 (Fla. 1971), which concerned the constitutionality of Section 800.01, Florida Statutes F.S.A.: "Whoever commits the abominable and detestable crime against nature, either with mankind or with beast, shall be punished by imprisonment in the state prison not exceeding twenty years." There we said:

"We have over a long period of time upheld the statute despite earlier constitutional challenges. We are persuaded that these holdings and this statute require our reconsideration. One reason which makes this apparent is the transition of language over the span of the past 100 years of this law's existence. The change and upheaval of modern times are of drastic proportions. People's understandings of subjects, expressions and experiences are different than they were even a decade ago. The fact of these changes in the land must be taken into account and appraised. Their effect and the reasonable reaction and understanding of people today relate to statutory language."
"... . The language in this statute could entrap unsuspecting citizens and subject them to 20-year sentences for which the statute provides. Such a sentence is equal to that for manslaughter and would no doubt be a shocking revelation to persons who do not have an understanding of the meaning of the statute.
"Those who are versed in the law may understand the statute's meaning because of their knowledge of legal interpretations in court opinions, but it seems to us that if today's world is to have brought home to it what it is that the statute prohibits, it must be set forth in language which is relevant to today's society and is understandable to the average citizen of common intelligence which is the constitutional test of such language." 257 So.2d at 23. (Emphasis supplied) (Footnotes omitted.)
"In general, a criminal statute, to be valid, must be so clearly and definitely expressed that an ordinary man can determine in advance whether his contemplated act is within or without the law, and, if deviation from a standard is prohibited, the standard must be definitely fixed."
"A defendant has right to have available, through a sufficiently precise statute, information revealing the standard of criminality before commission of the alleged offense." Id. at 25. (Roberts, C.J. Concurring Specially.) (Emphasis supplied.)
In referring to the need for a standard, perhaps Justice Roberts had in mind the following example of that which can happen in the name of such a statute: "It is a matter of common knowledge that Palm Beach is a unique and exclusive resort frequented by many persons of wealth and fame. Conduct which would hardly raise an eyebrow in a slum might well be considered a breach of the peace in such a community." Town of Palm Beach v. Loew, 21 Fla. Supp. 145, 146-147 (Palm Beach Co.Cir.Ct. 1963). Cf. City of St. Petersburg v. Waller, 261 So.2d 151 (Fla. 1972).
[18] 257 So.2d at 22-24.
[19] See notes 7 and 9, supra.
[20] See Section 856.021, Florida Statutes, 1971, F.S.A. (1972 Supp.).
[21] 114 So.2d 316 (Fla.App.2d 1959).
[22] Id. at 319. (Emphasis supplied). The particular facts involved in this case indicated that the defendant had directed abusive and profane language to police officers in a public street, much as in the Waller case (note 17, supra). See City of St. Petersburg v. Calbeck, 121 So.2d 814 (Fla.App.2d 1960).
[23] See, e.g., City of St. Petersburg v. Calbeck, notes 21 and 22, supra, where the facts also encompassed all, or at least some, of the elements of: Section 843.01, Florida Statutes, F.S.A., Resisting an officer without violence to his person; Section 847.04, Florida Statutes, F.S.A., Open profanity; and, Section 847.05, Florida Statutes, F.S.A., Using indecent or obscene language. See also State v. Magee, 259 So.2d 139 (Fla. 1972), where the facts also encompassed all, or at least some, of the elements of: Section 798.02, Florida Statutes, F.S.A., Lewd and Lascivious behavior; Section 798.03, Florida Statutes, F.S.A., Fornication; Section 800.02, Florida Statutes, F.S.A., Unnatural and Lascivious Acts; and, Section 800.03, Florida Statutes, F.S.A., Exposure of sexual organs.
[24] See, e.g., In re Fuller, 255 So.2d 1, 3 (Fla. 1971), which, in finding that the statute was unconstitutional as applied, specifically found that, "[T]here was no assault [which would have been a violation of Section 784.02, Florida Statutes]  and whether there was criminal profanity or obscenity [which would have been violations of Sections 847.04 and 847.05, Florida Statutes] on Appellant's part in the altercation is unclear in the record."
[25] 239 So.2d 250, 252 (Fla. 1970) (Boyd, J., dissenting) (Emphasis supplied.)
[26] On the contrary, our criminal code cup runneth over. An examination of the 1971 codification of the Florida Statutes reveals over fifty specific sections, all charging specific violations, completely covering every possible violation that has been in the past, or ever in the future will be, reasonably considered to be breach of the peace/disorderly conduct. See, e.g., Ch. 779, Treason; Ch. 784, Assault and Battery; Ch. 790, Weapons and Firearms; Ch. 798, Adultery and Fornication; Ch. 800, Crime against Nature/Indecent Exposure; Ch. 806, Arson; Ch. 821, Trespass and Injury to Realty; Ch. 822, Malicious Injury to Buildings and Structures; Ch. 833, Conspiracy; Ch. 843, Obstructing Justice; Ch. 847, Profanity; Ch. 861, Offenses Concerning Public Roads; Ch. 870, Affrays, Riots, and Routs; Ch. 871, Disturbing Religious and other Assemblies; Ch. 876, Criminal Anarchy; and, Ch. 877, Miscellaneous (877.13, Unlawful Interruption of or Interference with Educational Institutions).
[27] This would in no way impair the power of the State to re-try appellants for violation of some specific criminal law. See note 26, supra. I'd leave it to the prosecution to determine whether the facts encompass the elements of such a violation, and if so, which specific law is involved.