**Philip Joseph WIEGAND, Petitioner-Appellee,**

v.

**Honorable William H. SEAVER, County Judge, Dade City, Florida, et al., Respondents-Appellants.**

**No. 74-1086.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1974.

Robert J. Landry, Asst. Atty. Gen., Tampa, Fla., for respondents-appellants.

Robert A. Young, Asst. Public Defender, Dade City, Fla., for petitioner-appellee.

Bennett H. Brummer, Asst. Public Defender, Miami, Fla., amicus curiae.

Before TUTTLE, THORNBERRY and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge.

This case presents the question of the facial constitutionality of Florida's breach of the peace and disorderly conduct statute, F.S. 877.03.

Philip Joseph Wiegand pleaded nolo contendere to a charge that on August 8, 1973 he "did then and there engage in such conduct as to constitute disorderly conduct, to-wit: by using the words 'goddamn son-of-a-bitch' and causing a disturbance in the bar" Before sentencing by the state trial court, Wiegand petitioned federal district court for a writ of habeas corpus,[1] 28 U.S.C. § 2255, challenging the facial validity of F.S. 877.03 under which he had been charged. That statute provides:

> "Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them or engages in brawling or fighting, or en-

---

[1] Wiegand failed to exhaust state appeals procedures before seeking federal habeas relief. Normally this would be a bar to federal court consideration of the case. However, the district court found that exhaustion of state remedies would be futile in light of the Florida Supreme Court's recent decision upholding the facial validity of F.S. 877.03, State v. Magee, 259 So.2d 139 (Fla. 1972). The state expressly agreed that state appellate review would be futile in its response to the order to show cause, and accordingly we do not further consider the exhaustion issue on appeal.

gages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor in the second degree."

■ The district court found this statute to be unconstitutional on its face for vagueness and overbreadth, relying primarily on Severson v. Duff, 322 F.Supp. 4 (M.D.Fla.1970) which also found F.S. 877.03 unconstitutional on its face. The state appeals this finding. We affirm.

In our view Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) mandates this decision. Like the Georgia breach of the peace statute found to be unconstitutional in *Gooding*, in that it prohibited protected, as well as unprotected, speech we find that the Florida statute applies to protected speech and unless it has been authoritatively construed by state courts to limit its application solely to that speech which the state may constitutionally regulate, the statute cannot be upheld.

### I.

As an initial ground for distinguishing Gooding v. Wilson the state argues F.S. 877.03 by its own terms applies only to conduct, not to speech, and thus no first amendment issue is posed. We find this to be without merit.

The information against Wiegand charged him with the "conduct" of uttering certain words. Virtually all the state court decisions which have considered convictions under F.S. 877.03 have involved speech related offenses.[2] It cannot be seriously disputed that F.S. 877.03 penalizes speech. Like Cohen v. California, 403 U.S. 15, 18, 91 S.Ct. 1780, 1784, 29 L.Ed.2d 284 (1971) "[t]he only 'conduct' which the State sought to punish is the fact of communication." "Conduct" of this sort, which

clearly may entail expressive elements, is not at all the type of non-expressive conduct which of its very nature conveys no message and hence which may be regulated without affecting the actor's ability to express himself. *See, e. g.,* United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

We must further note that the fact Wiegand himself used only words which appear to have only the expressive quality of a street vulgarity of the commonest sort is irrelevant to our consideration of the facial validity of the statute.

■ We consider the facial validity of F.S. 877.03 despite the fact Wiegand's words might be properly "regulated by a statute drawn with the requisite narrow specificity," Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 366, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), for our concern with the potential future consequences of an overbroad statute which chills the exercise of protected rights requires us to consider the challenges to the statute of one who may not himself have been involved in protected speech, Gooding v. Wilson, *supra,* 405 U.S. at 521, 92 S.Ct. 1103.

■■ We are, further, conscious of the great difficulties in making a judgment about whether any particular utterance contains protected expressive qualities. From the meagre description of Wiegand's comments in the unnamed bar contained in the information filed against him, which is the only account of the incident in the record on appeal, we cannot know in what context he used the phrase "goddamn son-of-a-bitch." We cannot assume the words were "directed to the person of the hearer," Cantwell v. Connecticut, 310 U.S. 296, 309, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940)

---

2. Gonzales v. City of Belle Glade, 287 So.2d 669 (Fla.1973); Bradshaw v. State, 286 So.2d 4 (Fla.1973); In re Fuller, 255 So.2d 1 (Fla.1971); City of St. Petersburg v. Calbeck, 114 So.2d 316 (Fla.2d D.C.A.1960).

4 Fla.Jur. 597, "Breach of the Peace and Related Offenses" § 2 defines "disorderly

conduct" as "embracing all such acts and conduct as are of a nature to corrupt the sense of public decency, whether committed by words or acts." This definition was adopted in City of St. Petersburg v. Calbeck, *supra,* at 319, and is still an accepted construction of F.S. 877.03.

and were thus perhaps nothing more than a personal insult. It seems equally possible that the words were meant to describe some public figure with whom Wiegand disagreed and in that disagreement stood in the minority. Cohen v. California teaches that the state has an inadequate interest in an "undifferentiated fear or apprehension of disturbance," Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) to attempt to regulate what is a "suitable level of discourse within the body politic." Cohen v. California, *supra,* 403 U.S. at 23, 91 S.Ct. at 1787. Vulgar or even profane language is not necessarily unprotected, unless the words "by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Even "[w]holly neutral futilities . . . come under the protection of free speech as fully as do Keats' poems or Donne's sermons," Cohen v. California, *supra,* 403 U.S. at 25, 91 S.Ct. at 1788, citing Winters v. New York, 333 U.S. 507, 528, 68 S.Ct. 665, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting).

Thus whether Wiegand's unfortunate choice of words was idle barroom chatter or intense political discussion about which there is a "profound national commitment" that it be "uninhibited, robust, and wide-open," New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964), we conclude that F.S. 877.03 attempts an obvious and direct regulation of potentially protected speech which must be closely scrutinized lest it restrict the exercise of first amendment rights.

■ The Gooding v. Wilson standard is a clear one: "the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." 405 U.S. at 522, 92 S.Ct. at 1106. The language of the statute fails this test.

## II.

The state responds that definitive state court decisions have so narrowed the statute's reach that protected expression no longer can be penalized. Both Gonzales v. City of Belle Glade, 287 So. 2d 669 (Fla.1973) and In re Fuller, 255 So.2d 1 (Fla.1971) are cited for their restrictive readings of F.S. 877.03. In both these cases the Supreme Court of Florida reversed convictions under F.S. 877.03 because, in each case, the court found the statute to have been unconstitutionally applied to the individual defendants. In each case the state had failed to prove some actual disorder resulted from the speech in question. The court in In re Fuller, for example, carefully delineated between a mere "angry altercation" between two individuals and a "commotion" which would have breached the public order. Similarly *Gonzales* emphasized that "disorderly conduct" was to be read in its common law sense as requiring something more than "mere annoyance," an "intemperate expletive or two" or "threatening comments." The test which emerges is one based entirely on the factual issue of actual disruption or disorder. This test does not comply with the Gooding v. Wilson standard.

We do not find in these cases the type of definitive narrowing construction along constitutional lines as required by Gooding v. Wilson. Both reaffirm the use of the common law standards governing public disorder which the Supreme Court expressly rejected in *Gooding.* 405 U.S. at 527, 92 S.Ct. 1103. Both look to the degree of disturbance rather than the type of speech which may have caused the disorder in the first place. In neither opinion does the Florida court make the all important point that some speech may result in disorder, yet remain protected.

■ The fact that some speech may stir listeners to disagree—perhaps even to disagree violently—does not by that fact alone permit regulation. Dispute, disagreement and controversy are all encompassed within the first amendment's

protections—and a controversial and minority point of view is not the less protected because it is disliked. "[A] function of free speech . . . is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging." Terminiello v. City of Chicago, 337 U.S. 1, 4–5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949). If words which excite disfavor in the listener may have this effect attributed to the "content of the ideas expressed," Bachellar v. Maryland, 397 U.S. 564, 567, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970), then "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." Street v. New York, 394 U.S. 576, 592, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572 (1969); Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1964) (Black, J., concurring); Cox v. Louisiana (I), 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

Nothing in the construction by the state supreme court of F.S. 877.03 limits the application of the statute to those disturbances caused by a narrow class of unprotected speech—"fighting words," Gooding v. Wilson, 405 U.S. 518, 523, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Chaplinsky v. New Hampshire, 315 U.S. 568, 574, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)—as opposed to those caused by controversial ideas. While the narrowing construction is thus remedial, the Florida courts have not construed F.S. 877.03 "so as to avoid all constitutional difficulties." United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971).

Because F.S. 877.03 broadly encompasses both protected and unprotected speech within its range of prohibitions, and because no sufficiently narrow construction has been placed on the statute to resolve these constitutional difficulties, we find the statute unconstitutionally overbroad and accordingly affirm the judgment of the trial court.