## WHITE v STATE OF FLORIDA
### Case No. 89-0039-AC A02 (County Court Case No. 89-5962-MM A04)

Fifteenth Judicial Circuit, Palm Beach County

October 5, 1989

### APPEARANCES OF COUNSEL

**Richard L. Jorandby,** Public Defender and **Jeffrey L. Anderson, Esquire,** Assistant Public Defender, for appellant.

**David Bludworth,** State Attorney and **Robert Jaegers, Esquire,** Assistant State Attorney, for appellee.

Before CARLISLE, COHEN, SHOLTS, JJ.

### OPINION OF THE COURT

CARLISLE, J.

The question in this case is did Elmer violate 877.03 F.S. "Disorderly Conduct".

Elmer and Alfreda were lovers. Oh Lordy, how they could love.

Sworn to be true to each other, true as the stars above. She was his gal but she done him wrong.

Elmer came home to find Alfreda packing. He asked where she was going and she told him it was none of his business. She went over to the kitchen table and got a knife and she cut the screen. Elmer told her "there's two things you've got to do: you've got to pay for the screen. I'll have you arrested for cutting the screen;" and he told her "Give me the knife back 'cause the knife, it's a real special knife." Alfreda told ELmer she was not going to pay for anything and she was not going to give him anything back. Elmer called the police and Alfreda took her departure (T. 33, 34).

When the officers got to Elmer's house "there was nothing there, except Elmer White, hollering and yelling about Alfreda, which is an on-going thing." (T. 19) Elmer went off to look on his own and the police began to look south on Railroad Avenue, because they figured that is the way Alfreda would go, "like she usually does." (T. 20) They found Elmer and Alfreda at the Fina Gas Station. (T. 20). They were hollering at each other. Things got confusing. "He's yelling, Elmer is yelling at us because he wants her arrested for the night, . . . Alfreda is yelling at us and him because she don't want him near her, and we're kind of yelling at her because we know that she has the knife, and we want the knife." (T. 20)

"Ah, take one consideration with another— With Another,

The policeman's lot is not a happy one.

When constabulary duty's to be done— To be done,

The policeman's lot is not a happy one— Happy one."

Gilbert and Sullivan, The Pirates of Penzance, Act 11.

The employees of the gas station came out to watch the show (T. 21), as did people from the businesses located at The Plaza, who opened the back doors of their businesses so they could watch. (T. 21) At some point, according to Office DeMarco, Elmer and Alfreda threatened each other with violence and "they tried to get at each other, you know, to fight with each other." (T. 10) Alfreda pulled out Elmer's special knife and threw it across Dixie Highway. Alfreda was placed under arrest. Elmer got in his car and drove away. Elmer said it was not going to be over, so the police arrested him. (T. 10) The police describe this as an on-going domestic problem. (T. 23)

Elmer's argument is that a spirited argument between two individuals does not amount to disorderly conduct, nor does cussing out police officers. He points out no member of the public complained or was

50

incited to do anything wrong. He cites *Gonzalez v City of Belle Glade,* 287 So.2d 669, *Harbin v State,* 358 So.2d 856, and *K.G. v State,* 338 So. 2d 72. *Gonzalez* really involves two cases. In one, the defendants participated in a protest march and made threatening comments to police officers, and in the other, Gonzalez was dissatisfied with the service in a restaurant and she uttered an "intemperate expletive or two." The Florida Supreme Court held that conduct did not amount to disorderly conduct.

In *In re Fuller,* 255 So.2d 1, Fuller was putting a Negro History Week poster on a high school classroom door. He had the permission of the school administration to do so. A white girl ripped it off. Fuller told her that if she were a boy he would knock her out. He said 'mother' a couple of times and the evidence was unclear whether he said 'mother fucker' a couple of times. He raised his voice at a male teacher who also said he would have torn down the poster. The teacher and Fuller apologized to each other, the principal chewed out the girl, and the whole thing was forgotten. An officious deputy hear of the incident and brought charges of disorderly conduct. The Supreme Court held Fuller's conduct was not disorderly.

In *Saunders v State,* 339 So.2d 641, Saunders was, according to the testimony of a police officer, selling newspapers and hassling people. The court held that selling newspapers, however enthusiastically, does not amount to disorderly conduct.

The common denominator of the above cases is that they involve pure speech. But in *Wasserman v State,* 446 So.2d 231 (Fla. 3d DCA 1984), it was held that conduct, apart from the spoken word, could support a conviction for disorderly conduct.

*K.G., supra,* was observed with several other young females talking to the driver of an automobile which was stopped in the roadway. The officers asked the girls to leave the road and stand on the sidewalk. She complied but uttered profanities. When she became boisterous and loud she was arrested for open profanity. In affirming the conviction, the Third District Court of Appeal noted that people were coming out of heir houses and watching, and that others were stopping to assist the juvenile, and they too began yelling profanities at the officers. We cannot figure out what difference it makes that other people began to stop and assistant and also cuss out the officers. If Elmer was the charismatic leader that *K.G.* was half of Lake Worth might have come to his assistance. That he failed to rally the crowd does not seem to be the test. In *K.G.* people came out of their houses to watch. In Elmer's case people left their businesses to watch.

**51**

*Bradshaw v State,* 286 So.2d 4, stands for the proposition that even pure speech can constitute disorderly conduct, depending upon the atmosphere surrounding the incident. There officers had ejected some Black kids from a carnival. Bradshaw approached the kids and began talking to them. They then came back to the officer and Bradshaw demanded to know why they had been evicted. A large crowd began to gather. Bradshaw yelled "You white mother fuckers ain't going to make us leave." The court held that while the words were similar to those used in *Fuller,* the time, place and circumstances were quite different and the *Bradshaw's* interests and expression, judged in the light of all the relevant factors, was miniscule compared to a particular public interest in preventing that expression or conduct. The court said that public interest was obvious, to prevent a riot.

In *White v State,* 330 So.2d 3, White went to jail to bail his father out. He said "I want to get my fucking father, and I come to get him right now." The police told him it would take approximately 15 to 20 minutes to complete the booking procedure. White began to scream at the top of his lungs and called the officers mother fucking pigs for several minutes. An officer, who was in an adjacent room, came into the lobby. One of the officers testified it. "was affecting the entire station." The Supreme Court held that White's conduct passed the bounds of speech and reached the point where it was disorderly. The Court further held White's conduct would have been equally disorderly had he merely recited Mary Had A Little Lamb in the same tone and under similar circumstances.

" . . . the use of constitutionally protected words, when accompanied by oral non-verbal acts which infringe upon the rights of others to pursue their normal, lawful activities, (does not) extend the constitutional protection to such non-verbal act." In Elmer's case, we have an on-going domestic dispute and obviously the police are sick of it. Elmer and Alfreda are yelling at each other and people are leaving their businesses to watch. The two of them are trying to fight and would have done so except the officers kept telling Elmer not to get close to her. The officers are confronted with a lady that they suspect to be armed with a knife. They have their hands full without some idiot like Elmer interfering. They asked him to be quiet several times. Elmer's conduct was at least as egregious as White's. People, other than police officers, were affected. There was also an element of danger (Elmer's special knife).

The decision of the trial court is affirmed.