## STATE v. ALVAREZ, et al.

Nos. 75-52493, 94, 99, 52500, 1, 2,

3, 5, 6, 7, 8, 9, 14, 15, 16, 18, 19, 36, 38, 57, 69.

County Court, Dade County.

May 8, 1975.

Richard E. Gerstein, State Attorney, Theodore G. Mastos and Brian R. McComb, Assistant State Attorneys, for the state.

Philip Carlton, Jr., Miami, for the defendants.

MORTON L. PERRY, Judge.

*History of the case*

This matter came on for hearing on May 1, 1975 on defendants' amended motion to dismiss 21 informations filed in the crimes division of this court alleging violation of provisions of §800.02, Florida Statutes, relating to unnatural and lascivious conduct on the part of the defendants named in the informations.

The cases stem from arrests made by the city of Miami police department on February 13, 1975 of 64 persons who were in attendance at a private club exclusively frequented by homosexuals and located in the city of Miami.

Forty-three of the charges were dismissed by the court due to deficiencies in the arrest forms which originally served as charging documents. The state has refiled 21 cases by information as afore-noted resulting in said hearing on defendants' amended motion to dismiss.

The speedy trial period prior to which date all of said charges must be tried separately and by jury as requested by each of the defendants is May 13, 1975. In view of the less than 14 day period between the hearing and the running of the speedy trial period, the state and the defendants have stipulated to certain facts and the defendants have presented certain expert witnesses relating to the acts complained of and the applicability of the statute under which the charges were filed.

The parties have requested that the court enter its ruling on the amended motion to dismiss as expeditiously as possible in order that they may be given opportunity to take appropriate steps as may thereupon be necessary.

The motion among other contentions challenges the constitutionality of §800.02 — *"Unnatural and lascivious act.* — Whoever commits any unnatural and lascivious act with another person shall be guilty of a misdemeanor of the second degree, punishable as provided in §775.082 or §775.083" — and more particularly questions its applicability and constitutionality under the facts surrounding the arrest and the present sociological and medical status of the homosexual activities of the defendants as viewed by defendants' expert witnesses.

These witnesses included a medical doctor who serves as chairman of the department of family medicine of the University of Miami, a psychiatric social worker who is an associate professor at that university, two psychologists and a minister.

 

The state attorney cross-examined these witnesses, but called no witnesses in rebuttal to their testimony.

It is necessary to review the facts as stipulated, as well as the testimony presented to the court, before considering the law applicable in this matter.

### Facts stipulated by the parties

The Club Miami, where the arrests occurred, is a private bath club licensed by the city of Miami and county of Dade. Its membership is restricted to homosexuals only and such male members must pay a nominal yearly membership fee plus an admission price per attendance.

Inquiry is made by the club to determine that applicants are homosexuals before a membership card is given. Non-homosexual members of the public are thus protected from inadvertent entry onto the club premises. All of the facts complained of by the state were carried out within the confines of the club building.

The parties have stipulated that there were no known public connotations incident to the club's operation by way of complaints from the public, public view of the defendants or public interference by them on the streets or within the confines of the club. All of the members of the club were adult males and the parties have stipulated that there are no juveniles who have been affected through the activities of the club.

The homosexual activities complained of were carried out by consenting members in the privacy of the club and in dimly lit rooms contained therein.

The club contained whirlpool baths and exercise equipment typical of health clubs but all parties attempting to obtain membership were advised that club membership was restricted to homosexuals only as aforenoted.

Prior to the date of the arrest, a city of Miami police officer representing himself to be a homosexual received a membership card upon paying the prescribed fee. The officer was not in fact a homosexual.

The prosecutor stated that he was unaware of any specific complaint resulting from this action by the officer and candidly noted at the hearing that members of a law firm housed in a building adjoining the club were unaware of its homosexual character.

Following his obtaining of a membership card the police officer together with other city of Miami police officers conducted a "raid" of the club on February 13, 1975 resulting in the 64 arrests as aforenoted.

The 21 informations which are the subject of the amended motion to dismiss resulted from these arrests.

*Expert testimony presented by the defendants*

The expert witnesses who testified in behalf of the defendants were conceded by the state to be experts in their respective fields.

Mrs. Libby Tanner, associate professor of the department of family medicine at the University of Miami, testified that a responsibility of her department is to conduct courses for medical doctors covering subjects which include homosexuality.

She stated that homosexuality is a "valid lifestyle" and that oral genital contact and anal intercourse is "not unnatural".

Dr. Lynn Carmichael, who heads the department of family medicine at the University of Miami, testified that homosexuality is "a healthy activity" in terms of the individual and "healthy behavior" is "natural behavior."

Dr. Robert Sylvester, a clinical psychologist who has testified as a court expert on numerous past occasions during his thirty years experience in this field stated that there has been a "vast change with respect to public attitudes regarding homosexuality within the last twenty-five years."

He stated that the taboo against homosexuality originated with the Judaeo Christian religious concept which looked upon sex as for the sake of procreation only.

He agreed with the other witnesses by stating that homesexual behavior was natural and normal to homosexuals as regards their sexual needs and drives.

He testified, as did other witnesses, that in 1974 the American Psychiatric Association changed its listing of homosexuality from "deviant" to "variant." He testified that "variant" sexual behavior connoted a type of sexual activity which was natural and within an acceptable range of sexual activities.

Paul Bradley Wilson, a minister of the Church of God, stated that the derivation of §800.02 exclusively stemmed from the religious convictions of the members of the legislature and was based upon long standing religious taboos against homosexuality. The conclusion elicited sharp cross examination by the prosecutor.

Several of the witnesses stated that oral copulation between homosexuals was no more or less natural than like activities between heterosexuals.

The testimony of each of the expert witnesses was manifestly clear that in their opinions oral genital contact between heterosexuals and homosexuals was both natural and normal.. The same opinion was elicited from the said witnesses as regards anal intercourse.

The minister and psychologist, Marie Mehl, testified that homosexuals had a right to band together in this private club under constitutional guarantees of freedom of association as well as thus being afforded a means of satisfying their sexual needs.

The state attorney cross-examined the defendants' experts, but offered no rebuttal witnesses or evidence.

*A review of the* Delaney *and* Franklin *cases with respect to §§800.01 and 800.02*

On September 28, 1966, the Supreme Court of Florida held in Delaney v. State, 190 So.2d 578, that oral copulation as well as anal intercourse were prohibited by provisions of §800.01, Florida Statutes.

This statute provides — *"Crime against nature; punishment.* — Whoever commits the abominable and detestable crime against nature, either with mankind or with beast, shall be guilty of a felony of the second degree . . ."

In the *Delaney* case the high court stated at page 582 —

"Although the opinions of this court are not always the essence of clarity, and never as lucid as we would have them in this instance those previously rendered on this subject *clearly advise all people that in this state the abominable crime against nature includes copulation either by mouth or by anus . . .*

"We conclude, therefore, that Section 800.01 as previously construed by this court in the cited cases, does prohibit the act charged against this appellant, *and did and does afford him, and all other persons, notice* that the act complained of was a *crime* in this state with *at least the degree of definiteness required by our constitutions."* (Emphasis supplied.)

On December 17, 1971, in Franklin v. State, 257 So2d 21, the Supreme Court reversed the conviction of a man convicted under provisions of §800.01 for having committed a homosexual act by engaging in oral copulation in a car parked in a remote area during early morning hours in St. Petersburg, Florida. The court held — "If the statutory prohibition of Florida Statute 800.01 was intended

to be oral or anal sex activity indicated from *Delaney,* supra, *then this should be made clear in such a statute."* (Emphasis supplied.)

The court further held in the *Franklin* case — "Legislative action is long past due in this and related fields of personal relationships . . . The courts would much prefer appropriate legislative action, where *proper conditions and restraints can be set forth."* (Emphasis supplied.)

The court then went on to state — *"Section 800.01 is void on its face as unconstitutional for vagueness and uncertainty in its language, violating constitutional due process to the defendant . . ."*

> "We anticipate and recommend legislative study of the subject, *pending further legislation in the matter* [emphasis supplied] society will continue to be protected from this sort of reprehensible act under Section 800.02 . . .

> "Under the evidence in this case, the conduct denounced in Section 800.02 is a *lesser included offense."* (Emphasis supplied.)

The court continued to hold homosexual conduct between consenting adults a violation the provisions of §800.02 in Witherspoon v. State, 278 So.2d 611 (1973), and State v. Fasano 284 So.2d 683 (1973).

### *Legislation since the* Franklin *case with respect to* §§*800.01 and 800.02*

In light of the explicit language of the *Franklin* case this court must assume that the Supreme Court has continued to anticipate further legislation in the field of activities covered in §800.01, which was found void, and §800.02, which was held to be a "lesser included offense."

It would appear to this court that the 1974 legislature has failed to meet the anticipation of the Supreme Court in seeking legislative enactment wherein "proper conditions and restraints" concerning the subject matter of §§800.01 and 800.02 would be set forth.

Quoting further from the *Franklin* case, the Supreme Court in 1971 stated —

> "The courts would much prefer appropriate legislative action, where proper conditions and restraints can be set forth. We strive to observe the delineation of our branches of government, but in the case before us here, there is no doubt on its face that this statute [namely, §800.01] as worded cannot withstand the constitutional onslaught and must fall."

As noted, the Supreme Court has continued to "protect society" from the homosexual behavior described in the *Franklin* case, "pending further legislation in the matter" by holding §800.02 to be a lesser included offense to the voided §800.01.

The 1974 legislature entirely eliminated §800.01 from the statutory rolls effective October 1, 1974 and the legislature failed to replace this statute or reword §800.02 as a means of affording the courts the proper conditions and restraints which appear to have been sought by the Supreme Court in the *Franklin* case.

It would appear to this court that the specifics of homosexual behavior, namely, oral and anal intercourse, were more closely alluded to in §800.01 than in §800.02.

The Supreme Court most clearly reinforced this impression by concluding in the *Delaney* case involving homosexual conduct through oral copulation than §800.01 did advise the defendant "and all other persons that the act complained of was a crime in this state with *at least the degree of definiteness* required by our constitutions." (Emphasis supplied.)

As previously noted in this order, the Supreme Court has treated such homosexual conduct as a lesser included offense under §800.02 to §800.01 as set forth in the aforenoted *Franklin* case.

Although §800.01 had been voided by the Supreme Court in terms of its application for prosecutive purposes, it appears to have remained directive and on the statutory rolls as the statute encompassing the lesser included offense — namely §800.02 which had been utilized by the Supreme Court in dealing with cases involving homosexual activity commencing with the *Franklin* case as aforenoted.

The United States Supreme Court held in Papachristou v. City of Jacksonville, 405 U.S. 156 (February 24, 1972), that an ordinance was void for vagueness in that it failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by statute — ". . . it encourages arbitrary and erratic arrests and convictions, it makes criminal activities that by modern standards are normally innocent, and it places almost unfettered discretion in the hands of the police." (Syllabus, to *Papachristou* case.)

This case was cited by the Florida Supreme Court in reversing convictions under the Florida disorderly conduct statute in Gonzalez v. City of Belle Glade (287 So.2d 669). In that case the Florida Supreme Court further cited the *Franklin* case on page 24 "We are thoroughly in accord with upholding proper statutes, but *a court must guard equally against those which offend constitu-*

*tional standards and which constitute an infringement by the state upon private rights of citizens."* (Emphasis supplied.)

*Do the charges filed against the defendants offend constitutional standards and constitute an infringement by the state of the private rights of the defendants?*

In response to this inquiry this court would note the following —

(1) Counsel for the state and the defendants have advised the court, and the court has found nothing to dispute counsels' contentions, that there are no appellate court decisions in this state wherein the court has entered a ruling regarding criminal charges stemming from *homosexual acts* between *consenting adults* in a *private place* such as a home or private club exclusively reserved for membership of homosexuals wherein the parties charged both hold paid memberships in the club.

(2) There have been no rulings by the appellate courts of this state on criminal charges relating to homosexual conduct charged under §800.02 since the Florida legislature struck from the legislative rolls §800.01 effective October 1, 1974 without replacing said statute or amending §800.02.

(3) The expert testimony sets forth that homosexuals are a class and as such it is clear that they are entitled to freedom of of assembly, privacy and equal protection of the law as guaranteed under the United States and Florida constitutions.

(4) The court would further note that all of the expert witnesses testified that oral and anal sex was natural and normal and that no rebuttal testimony or other evidence was presented by the state to show that such homosexual conduct was lascivious or unnatural.

The court is not unaware that the prosecutor would have little difficulty in obtaining rebuttal witnesses at trial as regards the maintaining of a more adversary and more complete airing of the issues on the question of whether the homosexual conduct complained of is "natural" or "unnatural".

Accordingly, the court does not rule on this particular issue; nor does the court believe it necessary under the circumstances for a ruling to be entered upon the same.

The ultimate question in this case must center upon the question of whether the defendants were afforded due process as guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution, and the constitution of the state of Florida.

Another way of phrasing this question would be to ask whether §800.02 under which all of the defendants were charged for homosexual conduct did afford the defendants and all other persons notice that the act complained of was a crime in this state with at least the degree of definiteness required by our constitutions.

In the *Delaney* case which related to homosexual conduct as in the instant matter the Florida Supreme Court held that §800.*01* (emphasis supplied) — "does prohibit the act charged against this appellant, and did and does afford him, and all other persons notice that the act complained of was a crime in this state with at least the degree of definiteness required by our constitutions."

Thus, the Surpeme Court held that §800.01 and *not* §800.02 best afforded the public notice that the homosexual acts complained of in §800.01 were a crime.

It would appear to this court that the Florida Supreme Court was more specific in describing homosexual conduct under §800.01 as "the abominable and detestable crime against nature" in the *Delaney* case than under the more general category of "any unnatural and lascivious act with another person" as set forth in §800.02.

The Supreme Court stated in the *Franklin* case after declaring §800.01 to be void — "We anticipate and recommend legislative study of the subject", and the court immediately followed its plea for legislative clarification by adding — *"pending further legislation in the matter* society will continue to be protected from this sort of reprehensible act under Section 800.02." (Emphasis supplied.)

The court while voiding §800.01 for prosecutive purposes was no doubt aware that this law would continue to remain on the statute books until revised by the legislature as anticipated by the court in the *Franklin* opinion.

During the interim period the more specific §800.01 which had previously been adopted by the legislature to regulate homosexual conduct would be directive to the perhaps confused public as the statute to which the public might first turn as regards statutory interpretation of homosexual conduct and thereafter determined that §800.02 had become a "lesser included offense" to this statute.

Unfortunately the legislature merely repealed §800.01 and did nothing to furnish the public with "proper conditions and restraints" as sought by the court in the *Franklin* case. The legislature did not replace this statute which had for over 100 years been utilized by the legislature and the courts to regulate homosexual conduct.

Further the legislature did nothing to amend §800.02 to give it the "specific conditions and restraints" sought by the Supreme Court which would make the public aware that it had replaced §800.01 as the homosexual conduct statute.

With respect to homosexual conduct, §800.02 thus became a "lesser included offense" to a repealed statute.

This court does not believe that the Supreme Court expected the general public of Florida to erase over 100 years of regulation of homosexual conduct under §800.01 but rather, the high court anticipated that §800.01 would be repealed and replaced.

This court must now question in the light of the legislature's failure to enact legislation requested by the Supreme Court regarding homosexual conduct to replace §800.01 whether the Supreme Court's previous rejection of §800.02 in the *Delaney* case, and its rather strained appearing efforts to apparently shore up this statute, §800.02, by making it a lesser included offense to §800.01 — a statute which had served to regulate homosexual conduct in Florida for over 100 years — whether §800.02 can now pass constitutional muster under the existing facts, if at all, now that the Florida legislature has repealed §800.01 without replacement and without amendment of §800.02.

There are questions which come to mind concerning this latter statute which makes "any unnatural and lascivious act with another person" a crime.

Would oral sex between consenting man and woman or mutual masturbation in the secluded privacy of one's home be a crime? Would a husband and wife be restricted from criminal punishment by performing such activities in their marital abode . . . in a parked car away from public view?

May consenting homosexuals engage in oral sex or mutual masturbation in a private home owned by one of them or within the confines of a private club as herein described? Are either or both of these practices "natural" or "unnatural" as between man and woman, husband and wife, consenting homosexuals — in the privacy of their home, hotel room, private club, automobile . . . etc. The questions raised as regards these and no doubt many more like circumstances raise "conditions and restrictions" which were anticipated by the Supreme Court and which the legislature has failed to answer.

Provisions of the constitutions of the United States and the state of Florida state that the general public — and in this instance the defendants — are entitled to such answers.

Finally, this court would note that the Supreme Court threw out the conviction of a prison inmate who had committed forcible rape upon another inmate because the trial court had attempted to change the definition of "female" as found in the rape statute to include male. The court held in Wilson v. State, 288 So.2d 480 (Jan. 1974) — "the lack of a protective statute has affected the judicial conscience as it well should, but the court should not shoulder the burden and responsibility of the legislature . . . The legislature had two years to fill the void created by the holding of the sodomy statute unconstitutional. The wording has been changed in section 794.01, Florida Statutes, to read 'person' *but related crimes classified at common law as sodomy are as yet uncovered.*" (Emphasis supplied.)

It is now over three years that the legislature has had to fill the void created by the voiding of §800.01 in the *Franklin* case, and *related crimes classified at common law as sodomy continue to remain uncovered.* Not only with the repeal of this 100-year-old sodomy statute by the legislature did the remaining statute, 800.02, under which the defendants are charged, remain vague and fail to set proper guidelines for the defendants as previously noted, but also the court has herein set forth that the acts complained of occurred between consenting adults in privacy without public or juvenile connotations. The defendants, as a class, and under the circumstances set forth, are entitled to freedom of assembly, privacy and the equal protection of the law as guaranteed under the United States and Florida constitutions.

The defendants' motion to dismiss is granted.