340 So.2d 1155 (1976)
Donna MOFFETT et al., Appellants,
v.
STATE of Florida, Appellee.
No. 48260.
Supreme Court of Florida.
October 14, 1976.
Rehearing Denied January 24, 1977.
Elton H. Schwarz, Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., and Anthony J. Golden and Charles W. Musgrove, Asst. Attys. Gen., for appellee.
BOYD, Justice.
Donna Moffett and Janis Chiapparo were arrested for topless sunbathing on a public beach in St. Lucie County. They were charged with violating Florida's disorderly conduct statute, Section 877.03, Florida Statutes (1975) which, in part, reads:
"Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency . . *1156 shall be guilty of a misdemeanor of the second degree... ."
Following a trial without jury in County Court, St. Lucie County, the two were found guilty and sentenced. The trial court having passed on the constitutionality of Section 877.03, Florida Statutes (1975), we have jurisdiction of this direct appeal.[1]
Moffett and Chiapparo attack the disorderly conduct statute on several grounds of constitutional invalidity. In our view none of them are meritorious. The portion of the statute against which Moffett and Chiapparo level their attack has been upheld as constitutional by this Court before.[2]
Since the beginning of civilization public nudity has been considered improper.[3] We are fully aware of the changing social values as expressed in new modes of dress, but are convinced that by enacting Section 877.03, Florida Statutes (1975), the Legislature intended to prohibit adult females from appearing in public places, including Florida's public beaches, with openly exposed breasts.
Since the statute is constitutional as applied in this case and appellants' conduct falls within the statute, their convictions are affirmed.
It is so ordered.
OVERTON, C.J., and ROBERTS and HATCHETT, JJ., concur.
SUNDBERG, J., concurs in result only.
ENGLAND, J., dissents with an opinion with which ADKINS, J., concurs.
ENGLAND, Justice (dissenting).
I respectfully disagree with the majority's conclusion as to the applicability of this statute to the conduct of these appellants, and I regret my colleagues' decision to summarily dispatch the significant legal issues raised in this proceeding.
The conduct of appellants Moffett and Chiapparo which brought about their convictions under the disorderly conduct statute was, as the majority states, simply that they were sunbathing on a public beach in St. Lucie County without wearing a top to their bathing suits. Approximately 50 to 75 other people were present on the beach at the time. The arresting officer testified that some of the witnesses were personally offended by the presence of topless women on the beach; other witnesses testified that they had no objections. So far as the record indicates, no one left the beach or moved to a more remote section of the sandy expanse as a result of the women's choice of attire. There was no evidence or any suggestion of a disturbance. One of the appellants testified that a male made an amorous advance, which she ignored, but that like advances often occurred regardless of her state of attire.
Moffett and Chiapparo attack the disorderly conduct statute on the ground that it violates the First and Fourteenth Amendments of the United States Constitution, and Article I, Sections 2, 4 and 9 of the Florida Constitution.[1] Essentially they urge recognition of a right of free expression encompassing this type of activity, and argue that Section 877.03 fails to establish any discernible standards for what is permissible and what is not.[2] Their challenges to this statute raise innumerable questions which have plagued other courts attempting to deal with identical language in similar laws. For example:

*1157 "First ... there is the problem of what is meant by `public decency.' Does the word `decency' refer merely to bad manners or to immoral conduct or, more specifically, to immoral conduct with overtones of sex, eroticism or nudity? Does the term an `act * * * which openly outrages public decency' refer to conduct decent and moral when done in private, but not when in public; or conduct indecent or immoral, or both, even if private, which outrages the `public', whether done in private or public? Finally, even if we decide which attitude of the public, the moral or the decorous, is the one which must be outraged, there is the question `who is the public'? Do twelve jurors automatically represent it? That answer is a great deal easier to give in a homogeneous society, in times of well established precepts of morality and manners, such as Victorian England, than today. Our American ... society ... is highly heterogeneous in religion, race, social background and national origin, a fact which gives little assurance that the collective judgment of one jury will, in all but the most extreme cases, be anything like that of another. When the statute speaks of `public decency' does it presuppose some kind of consensus among the majority of the public as to what is and what is not `decent' and, if that assumption is wrong, to which segment of the public is the trier to look?"[3]
It is not necessary to resolve many of these complex questions, however, or to address appellants' free expression assertions. The bare facts in the record before us avoid these problems because they simply do not establish the commission of a crime under Section 877.03.
The language of Section 877.03 requires the prosecution to prove that a defendant committed an act which, by its very nature, corrupts public morality or is so indecent as to incite public outrage.[4] The State argues that it proved the commission of such acts by the testimony of policemen who believed other persons were offended by appellants' near nudity.[5] I would find that evidence, however, legally insufficient.
Section 877.03 contains strong words which require far more compelling evidence. The act derives its force from the action verbs "corrupt" (public morals) and "outrage" (public decency). If the statute's prohibition is dependent on mere offensiveness to casual observers, serious constitutional issues would be present as to whether the act was impermissibly vague. Musser v. Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948).
This Court has already held that the terms of this statute connote much more than an offense to the sensibilities of the persons who might view a particular form of conduct, and that the conduct it proscribes does not make the criminality of an act depend on the personal feelings of select observers.[6] Since that which is considered "immoral" or "indecent" varies considerably from generation to generation and from place to place within the state, the statute can only validly condemn acts repugnant to a general, public standard of morality.[7] *1158 The moral standards of contemporary society are hard to pinpoint, and in each case all the circumstances surrounding the alleged misconduct must be considered. This becomes less difficult, arbitrary or subjective if the inquiry is focused on a "corruption" of public morals or an "outrage" to public decency. These elements necessarily limit the statute to acts which incense virtually the entire citizenry, or which have a direct and positive corrupting effect on minors or others.
The record in this case presents no outrage or corrupting influence. Evolving standards of morality have made the freedom associated with minimal attire a feature of our contemporary society. Miniskirts and bikini bathing suits are accepted and, in some locales, standard modes of attire. Throughout Florida and the United States, if not throughout the western world, it has become common for women to wear tight-fitting and semi-transparent blouses or tops without an under-covering for their breasts such as brassieres. The apparent trend toward near nudity, and the preoccupation of our society with minimally-clothed females, are not merely expressions of personal freedom and taste. For years the government of Florida promoted nationwide interest in our sun and our beaches by advertisements which prominently featured skimpily clad females.[8]
I cannot conclude at this juncture in the evolution of modern society that the wearing of see-through blouses, or bikini bathing suits on Florida's public beaches, constitutes criminal conduct under this statute. By the same token, I can find no reasonable basis to differentiate and condemn as "disorderly conduct" the form of partial undress present here. How, I must wonder, will the majority react to a prosecution for wearing a transparent bathing suit, or one made from a translucent material which becomes transparent when wet?
The point is that under the wording of this statute it makes no sense for the courts of this state to be involved in drawing lines between permissible and impermissible variations on the degree of clothing worn by females. It seems far better to relegate criminal law enforcement to disruptively outrageous behavior, and to let society regulate its own dress standards through peer pressure and, whenever possible, civil community action. For example, there is nothing to prohibit communities from dividing beaches between those portions open to the general public and those open to persons who choose to go topless. Cf., Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). While some may choose to cross the lines for effect, curiosity or mere defiance of authority, the harm in such cases (if any) is minimal and well within the ability of local authorities to control.
I in no way suggest that Florida should tolerate public nudity, the apparent concern of a majority of this Court.[9] Nor would I rule out the possibility that the public sense of decency can be outraged by the conduct of persons who are nude or nearly nude in places where persons of all ages are permitted to swim or otherwise enjoy the resources of the state. If Moffett and Chiapparo had been bottomless as well as topless, or if their behavior had in fact been disruptive *1159 to others, a different situation might be presented upon which I am not now prepared to pass. I have no doubt, for instance, that some forms of sexual activity in a public place clearly fall within the prohibition of the statute even by contemporary standards,[10] although other conduct (such as public kissing) would not outrage the public sense of decency or offend contemporary public morals though some persons might find even that conduct improper.
I simply hold the view that less extreme challenges to decency and morality require a careful study of all surrounding circumstances, and that a conviction for criminal conduct can only be sustained on the basis of proof that an act actually causes public "outrage" or "corrupts" decency and contemporary morality.[11]
For the situation now before us, I would hold that topless sunbathing on a public beach is not by itself a violation of Section 877.03, and that no violation of that statute occurred on September 3, 1975 at "North Beach" in St. Lucie County when the two appellants, out of 50 to 75 present, were lying on the sand with their breasts uncovered.
ADKINS, J., concurs.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] State v. Magee, 259 So.2d 139 (Fla. 1972).
[3] Genesis 3:7 (King James) "And the eyes of them both were opened, and they knew that they were naked; and they sewed fig leaves together, and made themselves aprons."
[1] This Court recently upheld the constitutionality of a different part of this statute after considering similar arguments. White v. State, 330 So.2d 3 (Fla. 1976). We there construed the statute to prohibit conduct as opposed to mere words, limiting the operation of the statute to conduct which invades the rights of others to pursue lawful activities.
[2] In State v. Magee, 259 So.2d 139 (Fla. 1972), we expressly upheld the very language now before us against an assertion that the language was unconstitutionally vague. It is not necessary to recede from Magee in order to reverse these appellants' convictions.
[3] In re Davis, 242 Cal. App.2d 645, 651-52, 51 Cal. Rptr. 702, 706-07 (1966) (footnotes omitted).
[4] State v. Magee, 259 So.2d 139 (Fla. 1972), is illustrative.
[5] The arresting police officer testified:

"Q [by defense counsel]: Did anybody mention that their morals were being corrupt[ed] by what they saw?
A: No, I think they were more embarassed."
[6] Gonzales v. City of Belle Glade, 287 So.2d 669 (Fla. 1973).
[7] It is instructive to consider this observation made in Miller v. Jersey Coast Resorts Corp., 98 N.J. Eq. 289, 298, 130 A. 824, 828 (1925):

"[I]t would be a far stretch of the powers of this court, in this day of one-piece bathing suits, to hold that the defendant was guilty of maintaining a nuisance because the occupants of its cottage walked the streets clad only in their bathing costumes. It may be that the bather of yesteryear, clothed in the bathing costume of 1871 (the date of the covenant), was a less objectionable sight than the bathing beauty of to-day. But, judging from the popularity of the bathers' parades staged at some of our seashore resorts, the modern bathing beauty is not so uniformly objectionable to the eye as to justify the exercise of the injunctive powers of this court in excluding bathers from the streets of a seashore resort."
[8] The fact that toplessness is not more prevalent on the beaches or in the state's advertising programs may reflect in part the views of many that some fabric on females may have psychological effects on observers at least as stimulating as would be the case if no fabric were worn at all. Witness the disuse after only one or two fashion seasons of topless bathing suits.
[9] Florida's indecent exposure statute, § 800.03, Fla. Stat. (1975), prohibits such conduct. (One circuit court has held, however, that exposure of female breasts alone does not constitute indecent exposure. Moffett v. Collier, Case No. 76-5-CA (Fla. Okeechobee Cty.Ct. 1976.))

As to the relevance of Adam and Eve to this controversy, I prefer Holmes to Genesis:
"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV." Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897).
[10] See State v. Magee, n. 5 above (fornication).
[11] Cf. City of Cincinnati v. Wayne, 23 Ohio App.2d 91, 261 N.E.2d 131 (1970), reversing conviction for indecent behavior and indecent exposure for lack of proof that a woman attired without any covering above the waist, except for hat, gloves and "pasties", was not dressed according to community standards. "Courts are not privileged to take judicial knowledge that the dress of any person is indecent absent evidence." 23 Ohio App.2d at 96, 261 N.E.2d at 135. See also, People v. Gilbert, 72 Misc.2d 795, 339 N.Y.S.2d 743 (1973) (nude female sunbathing on public beach not inherently lewd); In re Smith, 7 Cal.3d 362, 102 Cal. Rptr. 335, 497 P.2d 807 (1972) (nude male sunbathing on public beach not necessarily lewd and indecent exposure).